Lewis KOFRON, et al., Plaintiffs Below, Appellants,

v.

AMOCO CHEMICALS CORPORATION, et al., Defendants Below, Appellees.

Earl R. NUTT, et al., Plaintiffs Below, Appellants,

v.

E. I. duPONT deNEMOURS & CO., INC., et al., Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted April 20, 1981.\*

Decided Jan. 6, 1982.

---

\* Although this case was originally submitted to the Court for consideration on this date, the proceedings were temporarily delayed due to disqualifications by Justices McNeilly and Horsey. Counsel by and on behalf of all parties to this proceeding stipulated that the reasons for the disqualifications were immaterial and agreed to the remittal of the disqualifications. Remittal of the disqualifications became effective on June 9, 1981.

Robert Jacobs (argued), of Bader, Dorsey & Kreshtool, Wilmington, for Kofron, et al., and Nutt, et al., plaintiffs below, appellants.

Howard M. Berg (argued), of Berg, Heckler & Cattie, Wilmington, for Amoco Chemicals Corp., et al., defendants below, appellees.

Thomas L. Morrissey (argued), of Carpenter, Bennett & Morrissey, Newark, N. J., for E. I. duPont deNemours and Co., Inc., et al., defendants below, appellees.

Before McNEILLY and HORSEY, JJ., and BROWN, Vice-Chancellor.

McNEILLY, Justice:

We here consider two appeals from decisions of the Superior Court which require us to determine the scope of coverage of the Delaware Workmen's Compensation Law. In both cases plaintiffs instituted common law causes of action based, respectively, on claims of gross negligence and intentional tort against defendants, their former or present employers, and a number of other corporations, engaged in the manufacturing of asbestos. In this opinion, however, we are concerned only with the allegations made against Amoco and duPont. The Superior Court granted defendants' motions to dismiss the claims pursuant to Superior Court Civil Rule 12(b)(6) for failure to state claims upon which relief could be granted. Plaintiffs appeal from these dismissals.

■ Because of the preliminary stage at which dismissal occurred in these cases, the only factual records before this Court are the complaints[1] filed by plaintiffs. In judging the merits of a motion to dismiss for failure to state a claim, all well-pleaded facts in the complaint are assumed to be true, *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168 (1976), and, as the Trial Court noted, a complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Diamond State Tel. Co. v. University of Delaware*, Del.Supr., 269 A.2d 52 (1970). Thus, the

1. In both cases the defense motions were directed to the respective plaintiffs' third amended complaint. Therefore, we focus, as did the Court below, on the allegations found therein.

"facts" set out below are merely the allegations found in the respective complaints and the reasonable inferences which may be drawn therefrom.

Certain basic factual similarities shared by these two cases should be highlighted before proceeding to a consideration of the particular allegations found in the two complaints. Plaintiffs are or were industrial workers who contracted certain diseases while in the employ of the defendants, chemical manufacturers with industrial plants in Delaware. The plaintiffs in *Kofron* worked at defendant Amoco Chemical Company's (Amoco) plant in New Castle. The plaintiffs in *Nutt* worked at defendant E.I. duPont deNemours & Company's (duPont) plant in Newport. The alleged origin of the diseases contracted by plaintiffs is overexposure to excessive levels of asbestos found in the working environments at these two plants.

The particular facts alleged in *Kofron* are as follows. Plaintiffs are or were at all pertinent times employed by Amoco at the New Castle plant and, over a lengthy period of time, were exposed to asbestos fibers in extremely dangerous concentrations. As a direct result of such exposure, plaintiffs now suffer from various stages of asbestosis, lung cancer and/or other pulmonary diseases. At all material times, Amoco, its predecessor in title, and its parent corporations were aware of the dangerous conditions at the New Castle plant and were in a position to rectify the problems, but failed to correct the dangers and failed to warn plaintiffs of the dangers to their health from the excessive levels of asbestos at the plant. Plaintiffs allege that these acts and omissions constitute negligence and gross negligence by Amoco and proximately caused plaintiffs' diseases. Moreover, plaintiffs aver that as employees they were within the class of persons to whom Amoco owed a duty to warn of the known asbestos-related dangers.

Several specific acts or omissions by Amoco are also alleged in the complaint. Plaintiffs claim that at all material times Amoco knew of the high levels of asbestos fibers and dust at the plant. Further, plaintiffs allege that Amoco possessed medical and scientific data and other information which clearly indicated that asbestos and asbestos products were hazardous to plaintiffs' health and safety, given plaintiffs' excessive exposure to such materials during the course of their work. Despite such knowledge, Amoco and other defendants purportedly engaged in a course of conduct (characterized as a conspiracy) intended to deceive plaintiffs and others similarly situated to their injury and to the advantage of defendants. In this regard, plaintiffs aver that Amoco:

(1) asserted to plaintiffs that it was safe for plaintiffs to work in close proximity to the asbestos materials, knowing this to be untrue;

(2) suppressed the information concerning the dangers of asbestos exposure, causing plaintiffs to be and remain ignorant thereof;

(3) failed to warn plaintiffs about the nature of the asbestos materials and the danger which such materials posed to them;

(4) failed to provide plaintiffs with adequate protective masks and devices and reasonably safe working conditions;

(5) failed to provide sufficient information concerning the asbestos dangers to physicians retained by Amoco to do periodic examinations of plaintiffs, and failed to inform such physicians of the true nature of its efforts to control asbestos dust levels at the plant;

(6) failed to operate the plant in accordance with state and federal regulations concerning dust levels and safe working conditions; and

(7) failed to file reports with the Industrial Accident Board, required by law, indicating that plaintiffs had contracted compensable occupational diseases from their exposure to asbestos materials when such facts became known to Amoco.

Plaintiffs also claim that physicians, whom Amoco retained to perform periodic physical examinations of employees, discovered the asbestos-related medical problems

in plaintiffs but failed to so inform them and advise them of the relationship between their diseases and the work environment at a time when the physicians and Amoco knew that plaintiffs were unaware of these facts. Plaintiffs contend that all the aforementioned acts or omissions were done falsely, fraudulently, wilfully and deliberately to deceive plaintiffs and that, had plaintiffs known the true facts, they would not have continued to work in the asbestos environment.

The facts alleged in the *Nutt* complaint are substantially similar to those in *Kofron*, with one main difference: whereas the primary tort characterization of Amoco's conduct in *Kofron* is negligence and gross negligence, plaintiffs in *Nutt* characterize duPont's conduct as constituting an intentional tort. In any event, the same basic allegations are found in *Nutt*. Thus, plaintiffs allege that at all pertinent times they are or were employed by duPont at the Newport plant, were there exposed to dangerous concentrations of asbestos over long periods of time, and, as a direct result of such exposure, have contracted incipient cancer and various pulmonary diseases. Plaintiffs claim that duPont knew of the asbestos-related conditions at the plant, knew that these conditions posed a significant danger to plaintiffs and others similarly situated, and failed to take any measures to alleviate the dangers and to protect the health and safety of plaintiffs. In particular, plaintiffs allege that defendants, including duPont, possessed medical and scientific data and other information which clearly indicated that asbestos and asbestos products were hazardous to plaintiffs' health and safety, given plaintiffs' excessive exposure thereto during the course of their work. Despite such knowledge, duPont and others purportedly engaged in a course of conduct (also characterized as a conspiracy) intended to deceive plaintiffs and others similarly situated to their injury and to the advantage of defendants. In furtherance of this design, plaintiffs allege that duPont:

(1) positively asserted to plaintiffs that it was safe for plaintiffs to work in close proximity to the asbestos materials, knowing this to be untrue;

(2) suppressed information concerning the dangers of asbestos exposure, causing plaintiffs to be and remain ignorant thereof;

(3) failed to warn plaintiffs about the nature of the asbestos materials and the dangers which such materials posed to them;

(4) failed to provide plaintiffs with adequate protective masks and devices and reasonably safe working conditions;

(5) failed to provide sufficient information concerning the asbestos dangers to physicians retained by duPont to do periodic examinations of plaintiffs, and failed to inform the physicians of the true nature of its dust control program at the plant;

(6) failed to operate the plant in accordance with state and federal regulations concerning dust levels and safe working conditions; and

(7) failed to file reports with the Industrial Accident Board, required by law, indicating that plaintiffs had contracted compensable occupational diseases from their exposure to asbestos materials when such facts became known to duPont.

Lastly, plaintiffs allege, as did the plaintiffs in *Kofron*, that all the foregoing acts and omissions were done falsely, fraudulently, wilfully and deliberately to deceive plaintiffs, and that, had plaintiffs known the true facts, they would not have continued to work in the asbestos environment. It is not contended, however, that duPont created or maintained the condition for the purpose of causing injury to its employees generally or to these specific plaintiffs.

In support of their motions to dismiss, Amoco and duPont argued that plaintiffs' actions are barred by the exclusivity provision of the Delaware Workmen's Compensation Law. The Superior Court agreed that the allegations in each case were insufficient to take plaintiffs' claims outside the coverage of the Workmen's Compensation Law. In *Kofron* the Superior Court ruled that an employee action based primarily on

alleged gross negligence by the employer cannot be maintained. The Court also held that the alleged acts by Amoco, which formed the basis for the fraud, deceit and conspiracy claims, preceded and helped to produce plaintiffs' injuries and were, therefore, merged into the injuries and not separately actionable. In *Nutt* the Superior Court ruled that an employee action based on the employer's alleged intentional tortious acts cannot be maintained unless it is further alleged that the employer acted with the subjective purpose of injuring its employees. The complaint was found to be insufficient because duPont was not alleged to have acted with the subjective purpose of injuring plaintiffs. The Superior Court further held that the fraud, deceit, and conspiracy claims merged into plaintiffs' injuries and were thus barred by the exclusivity provision of the Delaware Workmen's Compensation Law.

■ The question of whether the complaints in these cases state viable causes of action upon which relief may be granted is one of legislative intent and turns on the construction to be given to the Workmen's Compensation Law's exclusivity provision, 19 *Del.C.* § 2304 and its legislative history.[2] Section 2304 provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

When this Court is faced with a novel question of statutory construction, as here, we "must seek to ascertain and give effect to the intention of the Legislature as expressed in the Statute itself." *Keys v. State*, Del.Supr., 337 A.2d 18, 22 (1975); *Campbell v. Cochran*, Del.Super., 416 A.2d 211, 223 (1980). In performing this analysis, we give the statutory words their com-

monly understood meanings. *Moore v. Chrysler Corporation*, Del.Supr., 233 A.2d 53 (1967).

■ There can be no doubt that § 2304 includes within its coverage the kind of injuries suffered by plaintiffs. Although § 2304 refers specifically to "personal injuries" caused by accident, a review of the legislative history of the Delaware Workmen's Compensation Law and pertinent provisions thereof reveals that § 2304 encompasses not only injuries caused by accident, but also all compensable occupational diseases. Prior to 1937, only those injuries which naturally resulted from accidental physical violence to a bodily structure were covered under the statute. 29 Del.Laws, ch. 233 (1917) Revised Code of Delaware 1935, ¶ 6114 § 44. However, in 1937 the Legislature amended the statute to include coverage for specifically listed "compensable occupational diseases . . . arising out of and in the course of the employment." 41 Del. Laws, ch. 241 (1937). In 1949 the Legislature again amended the statute by eliminating the list of compensable occupational diseases and extending coverage under the statute to "*all* occupational diseases arising out of and in the course of employment . . . ." 47 Del.Laws, ch. 270 (1949). On the strength of this statutory history, we have not previously distinguished between accidental work-related injuries and occupational diseases in awarding benefits under the statute. See *Chicago Bridge and Iron Co. v. Walker*, Del.Supr., 372 A.2d 185 (1977); *Alloy Surfaces Co. v. Cicamore*, Del. Supr., 221 A.2d 480 (1966); *Air Mod Corp. v. Newton*, Del.Supr., 215 A.2d 434 (1965). Indeed, to reflect this fact, we rephrased § 2304 to read that "[e]very employer and employee . . . shall be bound . . . to pay and to accept compensation for all occupational disease . . . only when the exposure . . . has occurred during the employment . . . ." *Cicamore*, supra, at 486. Moreover, the term "personal injury," as used in § 2304, expressly includes "compensable oc-

**2.** For the legislative history of and statutory provisions related to 19 *Del.C.* § 2304, see the

Appendix following this opinion.

cupational diseases", 19 *Del.C.* § 2301(11), which are defined as "all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during employment." 19 *Del.C.* § 2301(4). Under § 2328 of the statute, compensation for a disability resulting from an occupational disease is payable in the same amount and manner had the disability been caused by accident. 19 *Del.C.* § 2328.

■ As we have noted previously, the twin purposes of the Delaware Workmen's Compensation Law are to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation. *Hill v. Moskin Stores, Inc.,* Del.Supr., 165 A.2d 447 (1960); See 1 Larson, Workmen's Compensation Law, § 2.20, at 5–7. These objectives have been embodied in the amendments to the statute, discussed above, and are firmly ensconced in § 2304. Thus, our analysis of the legislative history of § 2304 and related existing provisions of the present statute evidences a legislative intent in occupational disease cases to make Workmen's Compensation an exclusive remedy and to bar common law claims.

■ The language of § 2304, when read in the context of plaintiffs' respective claims predicated on gross negligence in *Kofron* and intentional tort in *Nutt* leads to the same conclusion. Section 2304, in conjunction with §§ 2301(4) & (11), plainly states that claims based on compensable occupational diseases are covered by the Workmen's Compensation Law" regardless of the question of negligence . . . ." While in some contexts the Legislature has chosen to distinguish between various degrees of negligence for the purpose of imposing liability on an actor, see, e.g., the *Automobile Guest Statute,* 21 *Del.C.* § 6101, and the *Premises Guest Statute,* 25 *Del.C.* § 1501, it

has declined to attempt such a degree classification in § 2304 of the Workmen's Compensation Law. Cf. *Gallegher v. Davis,* Del. Super., 183 A. 620, 625 (1936). Thus, the plain language of § 2304 compels the conclusion that all employee actions against employers for work-related injuries based on any degree of negligence, from slight to gross, are within the exclusive coverage of the Workmen's Compensation Law and may not be maintained under the common law.

The same result is obtained with respect to plaintiffs' "intentional tort" claim. Section 2304 explicitly provides that recovery under the statute is "to the exclusion of all other rights and remedies." Giving this language its commonly accepted meaning, *Moore,* supra, we hold that § 2304 precludes recovery under the common law grounds asserted by plaintiffs. While legislatures in other states have specifically allowed employees to proceed with a common law cause of action based on the theory that their employers maintained a dangerous working environment with the intent to injure them, see 2A Larson, supra, § 69.10, at 13–41 & 70.10, at 13–56 (1976),[3] our Legislature has not done so and we decline to act in its stead. In view of the magnitude of the asbestosis problem and the proliferation of workers' claims in this area, we believe that any changes in the Delaware Workmen's Compensation Law must come from the Legislature, whence it came and which, because of increasing informational input from both employer and employee lobbies, is perhaps best equipped to grapple with this issue. *Kittell v. Vermont Weatherboard, Inc.,* 417 A.2d 926, 927 (1980); *Provo v. Bunker Hill Co.,* 393 F.Supp. 778, 787–88 (D. Idaho 1975). Given our construction of § 2304, the decisions of the Superior Court, dismissing plaintiffs' complaints for failure to state causes of action upon which relief can be granted, are hereby

AFFIRMED.

---

**3.** Even if plaintiffs were operating under one of these statutes and sought to bring a common law action based on an intentional tort theory, plaintiffs' claim would require dismissal there because, under the weight of authority, their allegations are insufficient to state a common law claim of intentional tort and, therefore, fit within the provisions of the statute. See *Great Western Sugar Co. v. District Ct. of Mont.,* Mont.Supr., 610 P.2d 717 (1980); 2A Larson, supra, § 68.13, at 8–9.

BROWN, Vice-Chancellor (concurring):

I concur in the result reached by the majority. I concur also in the legal rationale. I feel compelled, however, to state my position somewhat more expansively.

From the allegations of the complaints in the two cases, it seems without question that recovery is being sought on behalf of that which would fall within the statutory definition of a compensable occupational disease as the term is used under the Delaware Workmen's Compensation Law. At 19 *Del.C.* § 2301(4) a compensable occupational disease is defined to include "all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during employment." In these cases plaintiffs allege an exposure to asbestos during the course of their employment and various diseased conditions resulting directly therefrom.

By § 2304 of the Workmen's Compensation Law it is provided that every employer shall be bound to pay, and every employee bound to accept, compensation as determined under the Law for personal injury arising out of and in the course of employment. By § 2301(11) the term "personal injury" is defined to specifically include "compensable occupational diseases." Thus, the approach of the plaintiffs in each case has been, of necessity, to attempt to establish some basis to justify the removal of their occupational disease claims from the limiting classification of "compensable occupational diseases" contained within the Workmen's Compensation Law.

At a given point in the past, this approach might well have been persuasive. Under present conditions, however, it is not. As the majority opinion points out in tracing the legislative history relating to the coverage of compensable occupational diseases, the status of the law at one time construed a personal injury under the Delaware Workmen's Compensation Law to mean "only violence to the physical structure of the body and such disease or infection as naturally results directly therefrom when reasonably treated ...." *Revised Code of Delaware 1935*, 6114 § 44.

By amendment in 1937, 6114 § 44 was expanded so as to cause the term "personal injury" to include certain compensable occupational diseases specifically listed in the amendatory act. Twelve separate occupational diseases were thereafter set forth, and the amendment specifically provided that compensable occupational diseases for the purposes of the Workmen's Compensation Law did not include any other than the twelve listed. 41 *Del.L.* Ch. 241. The necessary implication of this would seem to be that any other occupational disease incurred during the course of employment, whether through the negligence of the employer, by the knowing and intentional conduct of the employer, or otherwise, was not then covered by the Workmen's Compensation Law, thus leaving the stricken employee free to seek recovery against the employer under common law principles—just as plaintiffs seek to do now.

Thereafter, in 1949, the General Assembly again amended 6114, § 44 by specifically deleting the paragraph of the statute which listed the designated occupational diseases and which also provided that no other occupational diseases were compensable under the Workmen's Compensation Law. In lieu thereof was inserted a new paragraph which provided that "[c]ompensable occupational diseases shall include all occupational diseases arising out of and in the course of employment ...." 47 *Del.L.* Ch. 270. This appears to be the same statutory provision carried over presently in 19 *Del.C.* § 2301(4).

Thus, an occupational disease arising out of or during the course of employment is compensable under the Workmen's Compensation Law, and under that Law the employer is bound to pay, and the employee is bound to accept, compensation as determined under the applicable provisions of the Law.

Plaintiffs' argument to get around these statutes, as I see it, appears to be based on the premise that the manner in which the occupational disease was caused to be incurred during the course of employment—

as opposed to the fact that it was incurred during the course of employment—provides the necessary distinction. Thus their contentions that gross negligence or a knowledgeable and intentional course of conduct by an employer resulting in an occupational disease to an employee gives rise to a separate cause of action at common law notwithstanding the language of the workmen's compensation statutes.

But the fact remains that regardless of the circumstances leading up to it, an occupational disease arising out of and in the course of employment is, by statute, compensable under the Workmen's Compensation Law, and the same statutes make such compensation the exclusive remedy, except as otherwise expressly provided in the Workmen's Compensation Law itself. 19 *Del.C.* § 2304. What the plaintiffs are arguing for, then, reduces itself to a claimed right to elect their remedies in situations wherein they feel that the facts of the situation warrant it, i.e., to forego compensation to which they would be otherwise entitled under the statutes in favor of suing the employer at law for damages for the same compensable occupational disease because of what they feel to have been grossly negligent or intentionally tortious conduct on the part of the employer in causing the condition which gave rise to the occupational disease. But if permitted, this would constitute an exception to the right to recover for a compensable occupational disease not provided by the Workmen's Compensation Law itself. As such, it would violate the legislative expression that employment related occupational diseases are compensable exclusively under the Workmen's Compensation Law unless otherwise provided by the General Assembly.

It may be that under certain circumstances such a right of election is needed. Plaintiffs offer policy arguments in support of their position which have a certain amount of appeal. However, in view of the clear and all-encompassing scope of the statutes concerning occupational diseases, when measured against their legislative history, I agree with the majority that it is a matter properly to be presented to the General Assembly rather than to the Courts.

For this reason I concur in affirming the decision of the Trial Court in each case.

APPENDIX

The legislative history of and statutory provisions related to 19 *Del.C.* § 2304 include the following:

(1) 29 Del.Laws, ch. 233 (1917) provides in pertinent part:

Every employer and employee shall be conclusively presumed to have elected to be bound by the compensatory provisions of this Article and to have accepted the provisions of this Article, respectively, to pay and to accept compensation for personal injury or death by accident arising out of and in the course of the employment, regardless of the question of negligence, and to the exclusion of all other rights and remedies

(2) 41 Del.Laws, ch. 241 (1937) provides in relevant part:

Terms Construed:—The term "injury" and "personal injury" as used in this Chapter shall be construed to mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases, as are hereinafter defined, arising out of and in the course of the employment. When death is mentioned as a cause for compensation under this Chapter, it shall mean death resulting from such violence, its resultant effect when reasonably treated as aforesaid and occurring within two hundred and eighty-five weeks after the accident, and compensable occupational diseases, as are hereinafter defined, arising out of and in the course of the employment.

When applicable in this Chapter to compensable occupational diseases the following words and phrases shall be construed to have the following meanings:

Compensable occupational diseases shall not include any other than those scheduled below and shall include those so scheduled only when the exposure stated

in connection therewith has occurred during the employment, and the disability has commenced within five months after the termination of such exposure:

Occupational Diseases:

Anthrax;

Lead Poisoning;

Mercury Poisoning;

Arsenic Poisoning;

Phosphorus Poisoning;

Benzene, and its homologues, and all derivatives thereof;

Wood Alcohol Poisoning;

Chrome Poisoning;

Caisson Disease;

Mesothorium or radium poisoning;

Carbon Disulphide;

Hydrogen Sulphide.

. . . .

The compensation payable for death or disability total in character and permanent in quality resulting from an occupational disease shall be the same in amount and duration and shall be payable in the same manner and to the same persons as would have been entitled thereto had the death or disability been caused by an accident arising out of and in the course of the employment.

In determining the duration of temporary total and/or temporary partial and/or permanent partial disability, and the duration of such payments for the disabilities due to occupational diseases, the same rules and regulations as are now applicable to accident or injury occurring under the act to which this act is an amendment or supplement, shall apply.

See also 43 Del.Laws, ch. 269 (1941) (adding dermatitis, sillicosis, poison ivy and oak poison to the schedule of compensable occupational diseases).

(3) 47 Del.Laws, ch. 270 (1949) provides in pertinent part:

Compensable occupational diseases shall include all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during the employment and the disability has commenced within five months after the termination of such exposure.

(4) 19 *Del.C.* § 2301(4) & (11) provide:

(4) "Compensable occupational diseases" includes all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during employment.

(11) "Injury" and "personal injury" mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment.

(5) 19 *Del.C.* § 2328 provides:

The compensation payable for death or disability total in character and permanent in quality resulting from an occupational disease shall be the same in amount and duration and shall be payable in the same manner and to the same persons as would have been entitled thereto had the death or disability been caused by an accident arising out of and in the course of the employment.

In determining the duration of temporary total and/or temporary partial and/or permanent partial disability, and the duration of such payments for the disabilities due to occupational diseases, the same rules and regulations as are applicable to accidents or injuries shall apply.