OFFICE STRUCTURES, INC. and Rod-
ney Square Associates, Plaintiffs
Below, Appellants,

v.

HOME INSURANCE COMPANY and
Home Indemnity Company

and

Ci-De, Defendants Below, Appellees.

Supreme Court of Delaware.
Submitted: Nov. 19, 1985.
Decided: Dec. 30, 1985.
Rehearing Denied: Feb. 4, 1986.

Wayne N. Elliott and Michael P. Kelly (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiffs below, appellants.

Richard W. Pell and Anne L. Naczi (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for Home Ins. Co. and Home Indem. Co., defendants below, appellees.

James F. Kipp and Robert K. Pearce (argued) of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for Ci-De, defendant below, appellee.

Before CHRISTIE, C.J., and McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

At issue in these companion cases is whether the defendant subcontractor or its insurer owes the plaintiff contractor a defense and coverage under the parties' contract for claims asserted against the contractor in an underlying personal injury action. The contractor filed declaratory judgment actions in the Superior Court while the underlying tort suit was pending. The Superior Court granted the defendants' Motions for Summary Judgment in these declaratory judgment actions, finding that neither the subcontractor nor its insurer was contractually obligated to indemnify the contractor. We affirm.

I

Richard Pepper, an employee of subcontractor Ci-De was injured on May 7, 1979 on the site and during the construction of the One Rodney Square Building in Wilmington, Delaware. Office Structures,

Inc. ("Office Structures") was the owner and general contractor for the construction project. Pepper brought suit against Office Structures and three other defendants, alleging their negligence. *Richard Pepper and Esther Pepper v. Office Structures, Inc., et al.*, C.A. No. 81C–MR–51. While that case was pending, Office Structures and Rodney Square Associates ("Rodney Square") filed declaratory judgment actions against Ci-De and against the Home Insurance Company and Home Indemnity Company ("Home"), Ci-De's insurer, claiming that the defendants owed the plaintiffs a defense and coverage in the *Pepper* suit.

The *Pepper* action settled during trial, and the insurance carrier for Office Structures and Rodney Square made certain payments on behalf of its insureds. Office Structures and Rodney Square now seek to recover these insurance proceeds, as well as all costs, expenses, and attorneys' fees incurred in the defense of the *Pepper* action, from Ci-De or Home.

On January 16, 1985, the Superior Court denied Motions for Summary Judgment filed by Office Structures and Rodney Square in the companion cases, and it granted Home's Motion for Summary Judgment. The plaintiffs' Motions for Reargument were denied on February 1, 1985. Finally, the Court below granted Ci-De's subsequent Motion for Summary Judgment in an opinion dated July 9, 1985. Office Structures and Rodney Square have appealed from all three decisions. The appeals both as to Home and as to Ci-De will be treated together in this opinion.

## II

The contract between Office Structures and Ci-De contains the following indemnification provisions:

14. A. SUBCONTRACTOR hereby releases and agrees to indemnify, defend and save harmless CONTRACTOR and the Owner of the premises on which the work is to be performed from and against any and all liability, loss, cost or expense from or for any injury to or death of or damage to or destruction of any person or property arising from or caused by anything or act whatsoever. . . .

B. SUBCONTRACTOR hereby assumes the entire responsibility and liability for any and all injury or death to persons and damage to or destruction of property, of any kind or nature whatsoever, arising out of or incurred in connection with SUBCONTRACTOR'S performance, non-performance or mal-performance of this Agreement, and agrees to indemnify, defend and hold harmless CONTRACTOR from and against any and all loss, cost and expense incurred by CONTRACTOR by reason of any claim made against, or liability imposed by law or the General Contract upon, CONTRACTOR for any such damage or injury.

According to the original language of Paragraph 14A, the subcontractor was required to indemnify the contractor for the contractor's own negligence. This language, however, was specifically stricken from the contract, and the parties initialed the above version.

Paragraph 13 of the Office Structures/Ci-De contract provides that Ci-De was to "provide and maintain at its own expense, until the completion of the work," such insurance as was required from time to time either by Office Structures or by applicable law, as well as, *inter alia*, the following coverages:

2) Manufacturers and Contractors Liability, Contractual Liability, Contractors Protected Liability and Completed Operations

| Bodily Injury Liability | |
|---|---|
| Each person | $ 500,000 |
| Each occurrence | $ 500,000 |
| Aggregate | $1,000,000 |

The provision also required that the policies covering the above specifically show Office Structures and Rodney Square as named insureds.

Ci-De obtained a policy with Home Indemnity Company ("Home Indemnity")

which provided Comprehensive General Liability Insurance and Contractual Liability Insurance through December 2, 1979. This policy provided coverage of $500,000 for bodily injury for each occurrence, as required by the Office Structures/Ci-De contract. The endorsement stated that Home Indemnity would pay on behalf of its insured

> all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies....

A certificate of insurance was sent to Office Structures, naming Office Structures and Rodney Square as certificate holders. The policy itself, however, did not name Office Structures and Rodney Square as insureds, but named only Ci-De.

Ci-De also obtained an excess policy, which was in effect on the date that Richard Pepper was injured. This policy, entitled "Manuscript Excess Liability Policy", was obtained with the Home Insurance Company ("Home Insurance") and listed Ci-De as the only named insured. It provides that Home Insurance agrees

> to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability
>
> (a) imposed upon the Insured by law,
>
> or (b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Name Insured, while acting in his capacity as such,
>
> for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:
>
> (i) Personal Injuries, including death at any time resulting therefrom,
>
> (ii) Property Damage,
>
> (iii) Advertising Liability,
>
> caused by or arising out of each occurrence happening anywhere in the world.

The policy defines "Insured" to include, in addition to the named insured (Ci-De) and others,

> (b) any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Insured or of facilities of the Named Insured or used by them.

### III

Office Structures argues that Ci-De did in fact agree to indemnify it for its own negligence. It also contends that both the contractual liability insurance policy obtained by Ci-De through Home Indemnity and the excess policy obtained by Ci-De through Home Insurance provide Office Structures with the coverage Ci-De agreed to provide in ¶ 13 of the Office Structures/Ci-De contract. In the event that Office Structures is not covered under the Home policies, it contends that Ci-De is still obligated to provide coverage as insurer of the risk. Finally, the contractor argues that Ci-De must indemnify it under ¶ 14B of the Office Structures/Ci-De contract for "liability imposed by law."

### A.

Office Structures contends that, contrary to the Superior Court's determination, a reading of the Office Structures/Ci-De contract as a whole indicates that Ci-De did in fact agree to indemnify Office Structures for Office Structures' own negligence, noting that certain courts "have held that the presence of a contractual requirement that a contractor procure particular insurance suggests that both parties to the contract intended that the contractor indemnify the other party to the contract for that other party's own negligence."

 The validity of the above statement is irrelevant to the case at bar because Office Structures and Ci-De specifically deleted the original language in ¶ 14A of their contract requiring Ci-De to indem-

nify Office Structures for Office Structures' own negligence. It is quite clear that the parties intended that Ci-De not be liable for such indemnification. Richard Pepper, in the underlying personal injury action, alleged that the joint and several negligence of Office Structures and the other three defendants caused his injuries. Nowhere in the record is it asserted that Office Structures is vicariously liable for the negligence of the other defendants. That being so, Office Structures was liable only for its own negligence in *Pepper*. Because the indemnity agreement in ¶ 14A of the Office Structures/Ci-De contract clearly does not cover Office Structures' own negligence, we find that Ci-De is not obligated to indemnify Office Structures under that provision.

## B.

■ Next, Office Structures asserts it is covered under both of Ci-De's insurance policies with Home. As to the contractual liability insurance policy with Home Indemnity, Office Structures contends that Ci-De's obligation to procure insurance under ¶ 13 of the Office Structures/Ci-De contract constitutes a "contractual liability assumed by [Ci-De]" and therefore comes within the language and coverage of the Home Indemnity policy.

We do not agree. First, the Home Indemnity policy covers only those sums which the insured "shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." This provision does not provide coverage for the breach of a contract to procure insurance. Second, we find that the phrase "contractual liability assumed by [the insured] under any written contract" refers to liability incurred under a hold harmless or indemnification agreement, and not to liability resulting from the breach of a contract to procure insurance. *Accord Olympic, Inc. v. Providence Washington Insurance Co. of Alaska*, Alaska Supr., 648 P.2d 1008, 1011 (1982); *Haugan v. Home Indemnity Co.*, S.D. Supr., 197 N.W.2d 18, 23 (1972); *Action Ads, Inc. v. Great American Insurance Co.*, Wyo.Supr., 685 P.2d 42, 43–45 (1984).

■ As to the excess policy with Home Insurance, Office Structures contends it comes under the definition of "insured" in the Home Insurance policy and is therefore entitled to coverage. As with the contractual liability insurance policy, however, the excess policy expressly conditions its coverage, by virtue of its definitional provisions, on the liability assumed by Ci-De in its contract with Office Structures. Because Ci-De did not assume liability for Office Structures' negligence, neither policy provides Office Structures with coverage.

## C.

■ Office Structures next argues that, in the event it is not covered under the Home policies, Ci-De is nonetheless obligated to provide coverage itself. Office Structures points to the theory that one who agrees to obtain insurance, but fails to do so, becomes himself the insurer of the risk. In making this argument, Office Structures contends that Ci-De's obligation to obtain insurance under ¶ 13 of the Office Structures/Ci-De contract is separate and distinct from the contract's indemnity provision.

The contract under consideration here, however, must be read as a whole. Ci-De cannot be held to assume the risk when it is not liable to indemnify Office Structures for its own negligence in the first place.

## D.

■ Office Structures' final argument is that Ci-De must indemnify it under ¶ 14B of the parties' contract. That paragraph provides, *inter alia*, that Ci-De must indemnify Office Structures for "liability imposed by law" upon Office Structures for damage "arising out of or incurred in connection with [Ci-De's] performance, non-performance or mal-performance" of the parties' agreement. Ci-De and Office

Structures, according to Richard Pepper's proposed jury instructions in the underlying tort suit, were jointly responsible for compliance with OSHA safety regulations. Because Pepper's claim against Office Structures in the underlying suit was based on Ci-De's violation of the OSHA regulations, Office Structures argues, Ci-De must indemnify Office Structures for its "liability imposed by law."

We find, however, that Office Structures cannot obtain indemnification from Ci-De under ¶ 14B. The liability imposed by law at issue here must be somehow related to action by Ci-De. But Pepper looked to Office Structures, and not to Ci-De, for recovery in his personal injury suit; Ci-De was not even a party to that litigation. Any liability imposed upon Office Structures, then, resulted from its own negligence, and not that of Ci-De. Thus, Office Structures' claim of indemnification against Ci-De for liability imposed by law does not meet the prerequisites of 14B.

### IV.

We hold, therefore, that neither Ci-De nor Home is liable to indemnify Office Structures for the insurance proceeds paid and the costs and expenses incurred in the *Pepper* action. Neither the Office Structures/Ci-De contract nor Ci-De's insurance policies with Home provide Office Structures with coverage for its own negligence or for the liability imposed upon it by law. The Superior Court committed no error of law in granting the Motions for Summary Judgment by Ci-De and Home.

\* \* \*

AFFIRMED.