PRECISION AIR, INC., a Delaware Corporation, Third Party Defendant Below, Appellant,

v.

STANDARD CHLORINE OF DELAWARE, INC., a Delaware Corporation, Defendant and Third Party Plaintiff Below, Appellee,

and

Lisle E. Shaffer and Patricia A. Shaffer, Individually and as Husband and Wife, Plaintiffs Below.

No. 335, 1994.

Supreme Court of Delaware.

Submitted: Jan. 17, 1995.

Decided: Feb. 9, 1995.

Rehearing Denied March 6, 1995.

**404** ■

William J. Cattie, III (argued), Heckler & Cattie, Wilmington, for Precision Air, Inc., appellant.

William F. Taylor, Natalie S. Wolf (argued), Young, Conaway, Stargatt & Taylor, Wilmington, for Standard Chlorine of Delaware, Inc., appellee.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

VEASEY, Chief Justice:

In this interlocutory appeal we consider the contention of third-party defendant below-appellant Precision Air, Inc. ("Precision") that the Superior Court erred in denying its motion to dismiss a third-party complaint filed by defendant/third-party plaintiff below-appellee Standard Chlorine of Delaware, Inc. ("Standard"). This case requires us to decide whether the workers' compensation statute, 19 *Del.C.* § 2304 ("Section 2304"),[1] bars Standard from impleading Precision, an employer that has paid workmen's compensation benefits, into a negligence suit brought by an injured employee and his wife against Stan-

---

1. Section 2304, the exclusivity provision of Delaware's Workmen's Compensation Law, 19 *Del.C.* §§ *2301–2397, reads in relevant part:*
   Every employer and employee ... shall be bound by this chapter respectively to pay and to accept compensation for personal injury or

death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.
*Id.* § 2304.

dard, notwithstanding an indemnity contract between Precision and Standard. For the reasons set forth below, we hold that Standard is not precluded from impleading Precision under the circumstances of this case, which turn on the contractual claim arising out of the indemnity contract. We therefore affirm the ruling of the Superior Court denying Precision's motion to dismiss the third-party complaint.

## I. FACTS[2]

■ In August 1993, Standard accepted a bid from Precision to perform a service known as "stack-testing" on boilers used in Standard's chemical production plant in Delaware City, Delaware. Standard and Precision executed a contract on August 20, 1993, which states in relevant part:

6. [Precision] shall employ a competent foreman and any necessary employees during the progress of the Work, so that the Work shall be done in a safe, good, substantial and workmanlike manner....

\* \* \* \* \* \*

11. [Precision] covenants and agrees that it will forever indemnify and save harmless Standard ... from and against any and all claims, causes of action, liability, damage, costs and expenses (including reasonable counsel fees); which Standard may incur or which may be asserted against Standard, arising from bodily injury or death and/or property loss or damage occasioned by, growing out of, or incidental to acts or omissions whether negligent or otherwise by [Precision], including but not limited to any failure to comply with any governmental law, ordinance, rule or regulation....

(Paragraph 11 hereinafter referred to as the "Indemnification Clause").

On August 24, 1993, plaintiff below Lisle E. Shaffer ("Mr. Shaffer") incurred substantial injuries when he fell through the roof of a structure in the Delaware City plant while "stack-testing" a boiler. On January 11, 1994, Mr. Shaffer and his wife, co-plaintiff

below Patricia A. Shaffer (collectively, "Plaintiffs"), brought a personal injury action against Standard, claiming that Standard's negligence caused Mr. Shaffer's injuries. More specifically, Plaintiffs alleged in pertinent part:

4. Precision Air, Inc., had been subcontracted by [Standard] for the purposes of air quality testing.

\* \* \* \* \* \*

7. Defendant Standard Chlorine of Delaware, Inc., was negligent in that it:

\* \* \* \* \* \*

(e) failed to require and/or permit its ... contractors and/or subcontractors to comply with appropriate safety regulations and procedures when [Standard] had the right to control the actions of its ... contractors and/or subcontractors;

(f) required and/or permitted its ... contractors and/or subcontractors to use improper, unsafe and dangerous materials, machinery, equipment and techniques, when [Standard] knew, or should have known, that the use of such machinery, equipment and techniques was improper, unsafe and dangerous and when [Standard] had a right to control the actions of its ... contractors and/or subcontractors[.]

On April 11, 1994, Standard filed the third-party action against Precision, alleging that Precision was contractually liable to indemnify Standard in an amount equal to any percentage of liability that a fact-finder may attribute to Precision. Standard, in relevant part, averred:

8. Defendant [Standard], while expressly denying each and every of the allegations contained in Plaintiffs' Complaint, hereby incorporates by reference Plaintiffs' Complaint in this matter and avers that if any or all of the averments contained thereto are proven true, that Plaintiffs have suffered any injuries as alleged, then by virtue of [the contract] Precision Air, Inc. is required to indemnify [Standard] for any percent of liability for which Precision Air, Inc. may be found

---

**2.** Procedurally, this case is before the Court on a motion to dismiss, which requires that we accept as true all well-pleaded allegations in the com-

plaint and any reasonable inferences therefrom. *E.g.*, *Kofron v. Amoco Chems. Corp.*, Del.Supr., 441 A.2d 226, 227–28 (1982).

responsible in this action, and is further required to hold harmless [Standard] from and against all claims, damages, losses and expenses on the course of action declared upon by Plaintiffs including but not limited to attorneys' fees, in a percent equal to Precision Air, Inc.'s liability.

WHEREFORE, Defendant [Standard] alleges that Third–Party Defendant Precision Air, Inc. is solely liable to Plaintiffs, jointly and severally with and/or liable over to [Standard] for indemnification and/or contribution on the cause of action declared by Plaintiffs and thereby demands judgment accordingly.

Precision filed a motion to dismiss the third-party complaint, arguing that Section 2304 prohibited direct or indirect suits against it for its negligence and that the Indemnification Clause thus was not valid. On July 12, 1994, the Superior Court, after hearing oral argument, denied Precision's motion. That ruling is the subject of this interlocutory appeal.

## II. STANDARD OF REVIEW

■ We review *de novo* a ruling by the Superior Court denying a motion to dismiss. *See State v. Cephas,* Del.Supr., 637 A.2d 20, 23 (1994). Accepting as true all well-pleaded allegations in a complaint, the trial court's denial of the motion is erroneous only if a "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." *Kofron v. Amoco Chems. Corp.,* Del.Supr., 441 A.2d 226, 227 (1982); *accord Spence v. Funk,* Del. Supr., 396 A.2d 967, 968 (1978); *Diamond State Tel. Co. v. University of Del.,* Del. Supr., 269 A.2d 52, 58 (1970). An allegation, though vague or lacking in detail, is nevertheless "well-pleaded" if it puts the opposing party on notice of the claim being brought against it. 269 A.2d at 58; *see* Super.Civ.R. 8(e)(1) & (f). Here, because Standard's third-party complaint incorporates by reference the allegations in Plaintiffs' complaint,

we accept as true for purposes of this appeal the well-pleaded allegations in both the underlying complaint and the third-party complaint.

## III. APPLICABILITY OF THE INDEMNIFICATION CLAUSE AND ITS EFFECT THEREOF

Precision argues that, because it has paid worker's compensation benefits to Mr. Shaffer, Section 2304 prohibits Standard's suit, notwithstanding the Indemnification Clause.[3] Standard responds that it has a valid contractual action against Precision based on the Indemnification Clause, regardless of Precision's payment of compensation benefits to Mr. Shaffer. In its third-party complaint, Standard alleged two theories for recovery— contribution and indemnification. The Superior Court denied Precision's motion to dismiss, ruling that the Indemnification Clause provided Standard with a basis for recovery. We hold that Standard may not maintain a contribution action against Precision, but that its contractual indemnity action is viable under the Indemnification Clause.[4]

### A. Contribution Theory

■ Standard may not maintain an action against Precision based on a contribution theory. "Under the [Workmen's Compensation] Act[, 19 *Del.C.* §§ 2301–2397,] every employee is bound to accept compensation for personal injury caused by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies." *Histed v. E.I. duPont de Nemours & Co.,* Del.Supr., 621 A.2d 340, 342 (1993) (citing Section 2304); *accord SW (Del.), Inc. v. American Consumers Indus.,* Del.Supr., 450 A.2d 887, 888 n. 1 (1982) (hereinafter *American Consumers* ); *Kofron v. Amoco Chems. Corp.,* Del.Supr., 441 A.2d 226, 231 (1982). As a corollary, Section 2304 precludes the imposition of joint tort liability upon an em-

---

**3.** In support, Precision relies principally on *Hollingsworth v. Chrysler Corp.,* Del.Supr., 208 A.2d 61 (1965), and *Office Structures, Inc. v. Home Ins. Co.,* Del.Supr., 503 A.2d 193 (1985).

**4.** In denying Precision's motion, the trial court relied on the reasoning in *Kreider v. F. Schu-*

*macher & Co.,* D.Del., 816 F.Supp. 957 (1993). Though we agree with the trial court's ruling, we base our decision solely on our own prior precedent.

ployer in a suit brought by an injured employee against a third party where the employer has paid compensation benefits to the employee. *Howard, Needles, Tammen & Bergendoff v. Steers, Perini & Pomeroy,* Del. Supr., 312 A.2d 621, 623 (1973) (hereinafter *Howard*); *Diamond State Tel. Co. v. University of Del.,* Del.Supr., 269 A.2d 52, 55–56 (1970) (hereinafter *Diamond*). Because the employer cannot be held liable as a joint tortfeasor, it is not obligated to provide contribution to the third party. 10 *Del.C.* § 6301; *American Consumers,* 450 A.2d at 888 n. 1; *Diamond,* 269 A.2d at 55. The particular legal theory that the third party employs in attempting to recover from the employer does not affect this result. *Blackshear v. Clark,* Del.Supr., 391 A.2d 747, 748 (1978).

■ In the instant case, Standard's third-party complaint alleges: "[P]recision Air, Inc. is solely liable to Plaintiffs, jointly and severally with and/or liable to [Standard] for **indemnification and/or contribution** on the cause of action declared by Plaintiffs[.]" (Emphasis added). This Court's prior precedent, however, precludes Standard from seeking contribution from Precision because the substantive basis for such recovery would be Precision's liability as a joint tortfeasor. *See American Consumers,* 450 A.2d at 888 n. 1 (noting foreclosure of contribution component of a third-party complaint using same language as that highlighted above); *Diamond,* 269 A.2d at 55. Thus, the Superior Court's reliance on the indemnity theory, rather than the contribution one, in denying Precision's motion to dismiss was proper. Precision is entitled to have the contribution claim dismissed from the third-party action.

## B. Indemnification Theory

■ Standard's indemnification action against Precision can, however, survive Precision's motion to dismiss. An employer, even though it has paid workmen's compensation benefits to an injured employee, can be held contractually liable to a third party where a contract between the employer and third party contains provisions requiring the employer to: (i) perform work in a workmanlike manner; **and** (ii) indemnify the third-

party-indemnitee for any claims arising from the employer-indemnitor's own negligence. *American Consumers,* 450 A.2d at 889–90 (affirming dismissal of third-party complaint because would-be indemnitee's claim that it was entitled to indemnification based on an alleged implied promise to use due care by purported indemnitor was unsupported); *Howard,* 312 A.2d at 623 (affirming grant of employer's motion for summary judgment based on finding of no implied contractual obligation to indemnify); *Diamond,* 269 A.2d at 56–57 (affirming denial of motion to dismiss based on possibility of implied contractual obligations).

The *American Consumers* court elaborated:

> [D]elaware law [ ] recogniz[es] that a third-party tortfeasor may assert a claim for indemnification against the injured party's employer for the latter's breach of contract—express or implied—with the third party to perform in a careful and prudent manner, assuming the employer's breach of such duty was the actual cause of its employee's injury.... This ruling, or course, represents an exception to the exclusivity principle [in Section 2304] of our workmen's compensation law[.]

450 A.2d at 888 (internal citations omitted). Where both of the above-mentioned provisions are provided for by an express or implied contract:

> [A] third party has a right to maintain an action against a negligent employer who may be held liable for indemnity if the employer[ ] "... has breached an independent duty owed a third party, or if in the circumstances there is a basis for finding an implied promise of indemnity. If such is the fact, [the exclusivity provision of the workmen's compensation law is no bar to the third party suit against the employer.]"

*American Consumers,* 450 A.2d at 888–89 (insert in original) (quoting *Diamond,* 269 A.2d at 56–57) (citing 2A Arthur Larson, *Workmen's Compensation Law* § 76.00 (1970)). "[T]he intention to indemnify must[, however,] clearly appear in the terms of the [governing] agreement," *Howard,* 312 A.2d at 624, and generally does not extend to indemnification for an indemnitee's own neg-

ligence, *State v. Interstate Amiesite Corp.*, Del.Supr., 297 A.2d 41, 44 (1972); *Hollingsworth v. Chrysler Corp.*, Del.Supr., 208 A.2d 61, 64 (1965).

Further, such indemnity contracts are not against the public policy of Delaware. *Bar Steel Constr. Co. v. Read*, Del.Supr., 277 A.2d 678, 680 (1971). In that case, we rejected the contention of an indemnitor that an agreement to indemnify the indemnitee for the indemnitee's own negligence should not be enforced because of the exclusivity provision of the workers' compensation statute. *Read*, 277 A.2d at 679. In doing so, we reasoned:

> By reason of the express agreement of the parties, the situation is controlled by the indemnification clause upon which [the indemnitee's] cause of action is based. It follows that the case is not governed by the Workmen's Compensation Law.... Such agreement and result are not contrary to public policy, especially when ... the position and rights of the employee and his widow [the underlying plaintiffs] were not changed thereby.

*Id.* at 680.

In the instant case, Standard seeks recovery from Precision for only the latter's alleged negligence, not its own. Standard's contract with Precision contains the following provisions: (i) that Precision perform its obligations in a "safe, good, substantial and workmanlike manner"; and (ii) that Precision indemnify Standard for "any and all claims ... arising from bodily injury or death and/or property loss or damage occasioned by, growing out of, or incidental to acts or omissions whether negligent or otherwise by [Precision.]" These two provisions create an "independent duty" based on the contract law principle of indemnification. *See American Consumers*, 450 A.2d at 888–89; *Diamond*, 269 A.2d at 56–57. Unlike *American Consumers*, 450 A.2d at 888, and *Howard*, 312 A.2d at 624, where there was no clear intent to create such an obligation to indemnify, and *Diamond*, 269 A.2d at 58–59, where the Court was forced to remand the case to determine whether the facts supported such an implied obligation, Precision's duty to indemnify Standard for any claims based on Precision's own negligence is clear from the language of the Indemnification Clause.

■ An employer cannot be held liable for indemnification, however, where there is no allegation that the employer acted improperly, for in such a scenario an indemnification obligation predicated on such improper conduct never becomes applicable. *See Office Structures, Inc. v. Home Ins. Co.*, Del.Supr., 503 A.2d 193, 197–98 (1985); *American Consumers*, 450 A.2d at 888–89; *Hollingsworth*, 208 A.2d at 66. Where the third-party-indemnitee employs a tort theory for recovery, the injured employee's original complaint against the third-party-indemnitee must also include a claim alleging that the employer-indemnitor acted negligently. *See Office Structures*, 503 A.2d at 198 (indemnitee relying on tort principle of vicarious liability); *Hollingsworth*, 208 A.2d at 66 (indemnitee using tort law's fellow servant rule). Where the indemnification action is based on a breach of an implied or express indemnity contract, however, the issue of the employer-indemnitor's negligence can be injected into the case via either the third-party or original complaint. *See American Consumers*, 450 A.2d at 888 (employer-indemnitor's alleged negligence averred to only in third-party complaint, not original complaint by injured employee). That is, in the latter situation, for the indemnification obligation to arise, the underlying complaint need not state a claim against the employer-indemnitor. *See id.* Such a distinction, based on the legal mechanism the third party employs in seeking to recover from the employer, is consistent with the purposes of Section 2304, which include eliminating the employer's risk of being held liable for a tort-based judgment after having paid compensation benefits. *See Kofron*, 441 A.2d at 230–31 (relying on Section 2304's legislative history, as found in 29 *Del.Laws*, c. 233 (1917)).

■ In the instant case, Standard is seeking indemnification from Precision based solely on the latter's **contractual** obligation under the Indemnification Clause.[5] Thus, if

---

5. Only the **extent** of Precision's indemnification obligation (*i.e.*, damages) will be decided using the tort principle of negligence, not the **basis** for

either Plaintiffs' complaint or Standard's third-party complaint puts into issue Precision's negligence, then the Indemnification Clause applies. We find that both complaints put Precision's negligence into issue.

Given the bar of Section 2304, Plaintiffs could not and did not state in their complaint a claim against Precision. Plaintiffs alleged, however, that Standard was negligent in: (i) "fail[ing] to require and/or permit its ... contractors and/or subcontractors to comply with appropriate safety regulations and procedures"; and (ii) "requir[ing] and/or permitt[ing] its ... contractors and/or subcontractors to use improper, unsafe and dangerous materials, machinery, equipment and techniques[.]" Plaintiffs also alleged that "Precision Air, Inc., had been subcontracted by [Standard] for the purposes of air quality testing." Thus, Precision's improper conduct—*i.e.,* allegedly failing to comply with safety regulations and procedures, or using improper, unsafe, and dangerous instruments—as Standard's subcontractor was an issue in the underlying action by means of Plaintiffs' complaint.

Precision's alleged negligence also became an issue in this case via Standard's third-party complaint. In relevant part, paragraph 8 of the third-party complaint states: "[B]y virtue of [the contract between Precision and Standard,] Precision Air, Inc. is required to indemnify [Standard] for any percent of liability for which Precision Air, Inc. **may be found responsible** in this action ... in a percent equal to Precision Air, Inc.'s liability." (Emphasis added). The highlighted language is admittedly less than precise in articulating Standard's legal theory for recovery against Precision, namely, Precision's own negligence. Nonetheless, because paragraph 8 references the contract, which includes the Indemnification Clause requiring Precision to indemnify Standard for Precision's own negligence, the language in Standard's third-party complaint satisfies Delaware's notice-pleading requirements in the context of a motion to dismiss, which admits all well-pleaded allegations of the complaint. *See Diamond,* 269 A.2d at 58; *see also* Su-

per.Civ.R. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Given the analysis above, Precision's reliance on *Hollingsworth* is misplaced. In that case, "neither [the contractor] nor [subcontractor-indemnitee] ha[d] ever faced a claim based on an allegation that [the subcontractor] was negligent as to [the underlying plaintiff.]" *Hollingsworth,* 208 A.2d at 66. Here, Plaintiffs' action against Standard is based, *inter alia,* on an allegation that Precision acted improperly. Because Standard's indemnification action is based only on the contract, Plaintiffs need not also have stated a claim against Precision in order for the Indemnification Clause to apply. *See Office Structures,* 503 A.2d at 198; *American Consumers,* 450 A.2d at 888; *Hollingsworth,* 208 A.2d at 66. Further, bringing Precision's conduct into this case in this indirect manner does not run afoul of the general rule that, unless expressly and clearly indicated in contractual language, an indemnitee cannot indemnify itself for its own negligence, *see Interstate Amiesite,* 297 A.2d at 44; *Hollingsworth,* 208 A.2d at 64, because Standard is not seeking indemnity for liability stemming from its own alleged negligence.

Precision's reliance on *Office Structures* is similarly unpersuasive. In that case, the indemnification clause read:

B. SUBCONTRACTOR hereby assumes the entire responsibility and liability for any and all injury or death to persons and damage to or destruction of property, of any kind or nature whatsoever, arising out of or incurred in connection with SUBCONTRACTORS'S performance, non-performance or mal-performance of this Agreement, and agrees to indemnify, defend and hold harmless CONTRACTOR from and against any and all loss, cost and expense incurred by CONTRACTOR by reason of any claim made against, or **liability imposed by law** or the General Contract upon, CONTRACTOR for any such damage or injury.

*Office Structures,* 503 A.2d at 195 (emphasis added). The third-party-indemnitee in that case, Office Structures, settled a personal injury claim brought by an injured employee,

Standard's recovery—namely, breach of the indemnity contract.

Pepper. Thereupon, Office Structures sought recovery from the employer-indemnitor, Ci–De. The trial court granted a motion for summary judgment filed by Ci–De as to Office Structures' indemnity claim. *Id.* 503 A.2d at 195.

On appeal, this Court summarized Office Structures' argument: "Because Pepper's claim against Office Structures in the underlying suit was based on Ci–De's violation of the OSHA regulations, ... Ci–De must indemnify Office Structures for its 'liability imposed by law.'" *Id.* at 198. In affirming the trial court, the Court rejected Office Structures' contention:

> We find [ ] that Office Structures cannot obtain indemnification from Ci–De under ¶ 14B. The liability imposed by law at issue here must somehow be related to action by Ci–De. But Pepper looked to Office Structures, and not Ci–De, for recovery in his personal injury suit; Ci–De was not even a party to that litigation. Any liability imposed upon Office Structures, then, resulted from its own negligence, and not that of Ci–De. Thus, Office Structures' **claim of indemnification** against Ci–De **for liability imposed by law** does not meet the prerequisites of 14B.

*Id.* (emphasis added).

In this case, the "liability imposed by law" language in *Office Structures* is not present in the Indemnification Clause and Standard is not seeking recovery on that basis. That is, unlike the indemnitee in *Office Structures* that was seeking recovery based on the substantive tort principle of vicarious liability as applicable by the "liability imposed by law" contract language, *see* 503 A.2d at 198, Standard's action is based on Precision's **contractual** obligation under the Indemnification Clause, not a tort theory. *Office Structures,* therefore, is inapposite.

We hold that the Indemnification Clause controls this litigation. *See Read,* 277 A.2d at 680. Under that clause, Standard has a contractual basis for recovery based on Precision's agreement to indemnify Standard for any liability stemming from Precision's own negligence. Thus, the Superior Court did not err in denying Precision's motion to dismiss.

## IV.  CONCLUSION

We hold that the Indemnification Clause is applicable in this case. We further hold that, under that provision, there is a contractual basis for Standard to seek indemnification from Precision as to any percent of liability attributed to Precision, due to Precision's own negligence, in the underlying action by Plaintiffs against Standard. Therefore, we **AFFIRM** the ruling of the Superior Court denying Precision's motion to dismiss the third-party complaint, but only to the extent it is consistent with analysis herein. In doing so, we have not decided whether Standard, Precision, or both were negligent or acted improperly in any way. We **REMAND** the case for proceedings consistent with this Opinion. Jurisdiction is not retained.