HOWARD, NEEDLES, TAMMEN AND BERGENDOFF, a partnership, et al., Third-Party Plaintiffs Below, Appellants,

v.

STEERS, PERINI & POMEROY, Third-Party Defendant Below, Appellee.

Supreme Court of Delaware.

Nov. 1, 1973.

F. Alton Tybout of Tybout, Redfearn & Schnee, Wilmington, for appellants.

James T. McKinstry of Richards, Layton & Finger, Wilmington, for appellee.

HERRMANN, C. J., and CAREY and DUFFY, JJ., sitting.

CAREY, Justice:

This is a suit in which the third-party plaintiffs, appellants Howard, Needles, Tammen and Bergendoff, a partnership, and E. Lionel Pavlo, a partnership doing business as Howard, Needles, Tammen and Bergendoff, and E. Lionel Pavlo, a partnership and/or joint venture (hereinafter Engineers), a consulting engineering firm based in New York, are seeking indemnification from the third-party defendant appellee, Steers, Perini & Pomeroy (hereinafter Contractor), the contractor hired by the Delaware River and Bay Authority (hereinafter Authority) to build the second Delaware Memorial Bridge. Authority

had also hired Engineers to assist in the construction of this bridge.

The initial litigation in this case arose out of an accident on April 6, 1966, in which several of Contractor's employees were injured or killed by the collapse of a reinforced plywood form. This form was a temporary, box-like plywood frame, constructed to contain and shape concrete which was poured into it, and was to be removed after the concrete had set in its intended final form. The frame was constructed by Contractor from plans prepared by Contractor, with materials purchased by Contractor. Each frame was comprised of four flat, rectangular sections of reinforced plywood, joined together at the corners by tie rods purchased by Contractor and installed by Contractor. The concrete was mixed by Contractor from materials purchased by Contractor, and it was poured by Contractor while Contractor's employees worked within the form to compact the cement to the appropriate density. It was during the pouring of a massive quantity of concrete into one of these forms that the form collapsed, allowing the unset cement to flow freely, causing injury or death to Contractor's employees.

Those employees, or their representatives, sued Engineers, alleging negligence, and Engineers joined Contractor as third-party defendant. Engineers asserted that insofar as they might be liable to the plaintiffs, Contractor was liable to indemnify Engineers for any amounts they were required to pay the plaintiffs, and for contribution. In view of this Court's decision in Diamond State Tel. Co. v. University of Delaware, Del.Supr., 269 A.2d 52

(1970), the claim for contribution has not been pursued.

Contractor moved for summary judgment. The Superior Court, by opinion and Order dated July 29, 1971, denied the motion, and Contractor appealed to this Court. Engineers moved to dismiss the appeal on grounds that it was an appeal from an interlocutory order, and hence improper. However, at the time of argument on this motion, Engineers decided that it would be advantageous to all parties if the appeal could be resolved on the merits in order to avoid a trial in Superior Court of issues which the Supreme Court might later determine to be invalid. Therefore, on December 1, 1971, we issued an Order reversing the Superior Court decision, and remanding the case for further proceedings consistent with the Order. The sole issue decided by this Court at that time was whether Article III[1] of Contract 100 between Contractor and Authority meant that Contractor was liable to indemnify Engineers as "agents" or "servants" of Authority. We held that, applying the rule of strict construction which is appropriate to such a contract provision (see State of Delaware v. Amiesite Corporation, Del. Supr., 297 A.2d 41, 1972; Powell v. Interstate Vendaway, Inc., Del.Super., 300 A.2d 241, 1972), Article III was not sufficiently clear on its face to create in Engineers any right of indemnity. Therefore, we said, the question of whether Engineers were "agents" or "servants" of Authority is academic.

Subsequently, the Superior Court granted a severance of the third-party claim and proceeded to a trial of the principal action

---

1. Article III provides:

"The Contractor agrees to make payment of all proper charges for labor and materials required in the aforementioned work, and to indemnify and save harmless the Authority, its officers, agents and servants, and each and every one of them, against and from all suits and costs of every name and description, and from all damages to which the Chairman of the Authority, or any of his officers, agents or servants may be subjected by reason of injury to the person or property of others resulting from the performance of said work, or through the negligence of said Contractor, or through any improper or defective machinery, implements or appliances used by Contractor in the aforesaid work, or through any act or omission on the part of said Contractor, or his agents, employees or servants."

of the employees. In the early stages of that trial, the defendant third-party plaintiff (Engineers) agreed to an entry of judgment against them in favor of the various plaintiffs, and that judgment was entered on December 18, 1972.

The Superior Court, pursuant to our Order of December 1, 1971, then entered an Order on December 18, 1972, granting Contractor's motion for summary judgment. This is Engineers' appeal from that decision.

I

■ It is clear that, because Contractor has paid compensation to the original plaintiffs under the Workmen's Compensation Law, Contractor is not liable to Engineers as a joint tort-feasor. *Diamond, supra.* Therefore, any claim for indemnity must be based upon a contract, expressed or implied. We have already ruled that Engineers cannot recover against Contractor as "agents" or "servants" within the meaning of Article III, Contract No. 100, and Engineers do not now seek to reassert that theory. Rather, they now contend that there is, flowing from Contractor to Engineers, an implied promise of indemnification. For this argument, they rely upon *Diamond, supra.*

In *Diamond, supra,* an employee of the phone company was electrocuted while installing a T.V. cable into one of the University's buildings. His widow brought suit against the University, alleging that it was negligent in maintaining a dangerous condition on its premises, to-wit, the manhole in which the decedent was killed. The University sought to join the phone company as a third-party defendant for purposes of indemnification. The University alleged that the phone company, an independent contractor, acting at the University's request, had breached an implied covenant to perform the specified work in a workmanlike manner, giving rise to liabili-

ty for indemnity. The University argued that a jury could find that the phone company's failure to notify the University of the beginning of its work (which notification would have enabled the University to cut off power to the cables in the work area) was a breach of an implied promise to perform the work in a workmanlike manner. We held that an employer who has paid workmen's compensation benefits to injured employees may be held liable for indemnity if he has breached an independent duty owed a third party, or if there is a basis for finding an implied promise of indemnity.

In our discussion in *Diamond, supra,* we briefly reviewed *Larson's* treatment of this field of indemnity liability,[2] and we noted that there were four categories of cases in which such an implied promise may exist. We said:

"The first category is that in which the employer coming upon the premises to perform his services creates a dangerous condition and the third party fails to discover that dangerous condition and injury results. In that circumstance, the employer is liable to indemnify the third party for any damages obtained against it." *Diamond, supra,* p. 57 of 269 A.2d.

Engineers contend that a jury could find that Engineers' negligence consisted only of their failure to discover defects in Contractor's work, and hence they fit squarely within this category of cases.

■ Contractor concedes, and we agree, that a jury might, depending upon the facts adduced at trial, conclude that Engineers' only negligence was failing to discover a dangerous condition created by Contractor. However, that conclusion is of no consequence unless one also finds that there existed an implied *contractual* duty to Engineers to perform the work in a workmanlike manner, *and* an implied *contractual* promise of indemnification. *Diamond, supra.*

2. Larson, 2 Workmen's Compensation Law, § 70 (1970).

There are two fundamental differences between *Diamond, supra,* and the case now before us. First, in *Diamond,* the action for indemnity was between the two contracting parties—the landowner (University) and the independent contractor (the phone company). Here, we have a case in which the landowner (Authority) is not a party. Rather, the action is between two contractors who have contracted with Authority, but enjoy no contractual relationship with each other. Secondly, in *Diamond,* there was no written contract. In this case, we have a written contract between Contractor and Authority, with a clause which expressly sets forth the former's indemnity liability. . These differences indicate that *Diamond* is no precedent for Engineers' position.

■ Although Engineers do not now contend that they are "servants" and "agents" of Authority within Article III of Contract 100, they point to certain other provisions of Contract 100 in an attempt to show that Contractor had an obligation to perform its work in a workmanlike manner vis-a-vis Engineers. From this, they extrapolate an implied promise to indemnify Engineers for any liability which Engineers might incur as a result of Contractor's breach of that duty. In short, although Engineers are not parties to Contract 100, they look to the terms of that contract for an implied promise of indemnity. We hold, however, that when the parties to a contract have entered into a written agreement, expressly setting forth one party's indemnity liability, there is no room for any enlargement of that obligation by implication. See County of Alameda v. Southern Pacific Company, 55 Cal.2d 479, 11 Cal.Rptr. 751, 360 P.2d 327 (1961). There can be no implied promise of indemnity in Contract 100, for, as we have said in State of Delaware v. Amiesite Corp., *supra,* and Powell v. Interstate Vendaway, Inc., *supra,* the intention to indemnify must clearly appear in the terms of the agreement. That intention does clearly appear

in Article III, and nowhere else. This holding is consistent with the general rule that the law does not favor contracts which indemnify one against the consequences of his own negligence. Pan American World Airways v. United Aircraft Corp., Del.Supr., 163 A.2d 582 (1960).

Engineers also rely upon the leading case of Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) and upon Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). Neither of those cases concerned an express written indemnity provision. Furthermore, most decisions subsequent to *Ryan* have noted that the principle enunciated by that case is peculiar to maritime law, and few courts have extended it to other areas of the law. While we relied upon *Ryan* in *Diamond, supra,* it clearly does not apply to cases such as the one we now consider.

II

Engineers also contend that Authority, Contractor, and Engineers are linked together in a "chain of contracts" sufficient to permit Engineers to secure indemnity from Contractor. For this proposition, Engineers rely upon three cases: Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., *supra;* Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); and Waterman Steamship Corporation v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). All of these are federal cases concerning maritime law.

The litigants in *Weyerhaeuser, supra,* were parties who *had* contracted with each other, and whose contract contained no express indemnity provision. The facts of that case, therefore, are far different than

the circumstances here. In *Crumady, supra,* the stevedore's contract was actually with a charterer, not the vessel's owner. The Court reasoned that the warranty of workmanlike service which a stevedore owes when he goes aboard a vessel to perform services is for the benefit of the vessel, whether the vessel's owners are parties to the contract or not. Therefore, in the *in personam* action against the vessel, direct privity of contract between the stevedore and the shipowners was not necessary. Again, this case is not at all similar to the instant one. *Waterman, supra,* held that a direct contractual relationship between the stevedore and the shipowner was not a necessary prerequisite to the shipowner's right to indemnity, where the stevedore was engaged by the consignee of the cargo, not the shipowner. In *Waterman, supra,* there is no indication of the existence of an express indemnity agreement such as the one in Contract 100. While *Waterman* has indeed stretched the *Ryan* theory of implied promise of indemnity, it must be restricted to the particular field of law which it most directly concerns—admiralty law—and to circumstances which warrant the finding of an implied promise of indemnity. These cases do not support Engineers' argument that Contractor is liable to Engineers despite the existence of an indemnity clause in Contract 100, and Engineers are mistaken when they suggest that *Diamond, supra,* embraces this "chain of contracts" theory. It does not.

We see no legal basis for holding Contractor liable to indemnify Engineers. Indeed, any such result under the circumstances of this case would be a thinly-veiled decision to hold Contractor liable because of its *negligence,* a result clearly proscribed by *Diamond, supra.*

For the aforementioned reasons, we hold that the lower Court's decision granting Contractor's motion for summary judgment was correct.

Affirmed.