**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ALDO PATRONE and MADELYN PATRONE, husband and wife, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No.: N17C-08-086 EMD |
| COMMERCE ASSOCIATES LP d/b/a STAT INTERNATIONAL, LLC, STAT OFFICE SOLUTIONS, STAT INTERNATIONAL BUSINESS OFFICE SOLUTIONS, COASTAL INVESTMENT ADVISORS, INC., a Delaware corporation; ENERGY TRANSFER SOLUTIONS, INC., a foreign corporation, and DVL GROUP, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| and | ) ) | |
| COMMERCE ASSOCIATES LP d/b/a STAT INTERNATIONAL, LLC, STAT OFFICE SOLUTIONS, STAT INTERNATIONAL BUSINESS OFFICE SOLUTIONS, | ) ) ) ) ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| ENERGY TRANSFER SOLUTIONS, INC.; DVL GROUP, INC.; and ENERGY TRANSFER SOLUTIONS, LLC, | ) ) ) ) | |
| Third-Party Defendants, | ) ) | |

Submitted: July 11, 2018
Decided: October 29, 2018

*Upon Third-Party Defendant Energy Transfer Solutions LLC's Motion to Dismiss Second Amended Third-Party Complaint,*
*Upon Third-Party Defendant Energy Transfer Solutions LLC's Motion to Dismiss DVL Group, Inc.'s Cross-Claim*
**DENIED in part GRANTED in part.**

**DAVIS, J.**

## I. INTRODUCTION

Commerce Associates, LP ("Commerce Associates")[1] owns a property at 1201 North Orange Street, 9th Floor, Wilmington, Delaware 19801 (the "Property"). On January 12, 2015, Commerce Associates and Energy Transfer Solutions, Inc. ("Energy Solutions"), a division of DVL Group, Inc. ("DVL") entered into an agreement (the "Installment Agreement") on January 12, 2015. Under the Installment Agreement, Energy Solutions would install a water source heat pump at the Property. On November 9, 2015, DVL and Energy Solutions contracted with One Commerce Condominium Council ("Condominium Council") to provide preventative maintenance services (the "Maintenance Agreement") for the heat pump and other equipment at the Property. DVL entered into an asset purchase agreement (the "APA") with Energy Transfer Solutions, LLC ("Energy Solutions LLC") on December 30, 2016. Under the APA, Energy Solutions LLC would purchase DVL's Energy Transfer Solutions division. In addition, Energy Solutions LLC would assume certain liabilities from DVL under the APA.

On February 27, 2017, Aldo Patrone was working as an HVAC mechanic at the Property when he came into contact with unmarked live electrical wires. Mr. Patrone suffered injuries. Mr. Patrone and Madelyn Patrone filed suit against Commerce Associates, Energy Solutions, and DVL. Thereafter, Commerce Associates filed an answer and asserted third-party claims against

---

[1] Commerce Associates LP d/b/a Stat International, LLC, Stat Office Solutions, Stat International Business Office Solutions.

2

Energy Solutions, DVL, and Energy Solutions LLC. DVL, in turn, filed a cross-claim against Energy Solutions LLC. Energy Solutions LLC filed (i) the Third-Party Defendant Energy Solutions LLC's Motion to Dismiss Second Amended Third-Party Complaint and (ii) Third-Party Defendant Energy Transfer Solutions LLC's Motion to Dismiss DVL Group, Inc.'s Cross-Claim (collectively, the "Motion"). Commerce Associates, DVL and the Patrones opposed the Motion. The Court held a hearing (the "Hearing") on the Motion on July 11, 2018. Upon conclusion of the Hearing the Court took the Motion under advisement.

For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## II. RELEVANT FACTS

On January 12, 2015, Commerce Associates and Energy Solutions, as a division of DVL, entered into the Installment Agreement to remove an existing water source heat pump on the 9th floor of the Property.[2] Energy Solutions would also sell and install a new water source heat pump and "make all connections for wiring, piping, and duct work, as well as inspecting the new system to assure that it worked safely and properly."[3] The Installment Agreement also contains an arbitration clause that provides as follows:

> . . .All claims, disputes, and controversies arising out of or relating to this contract, or the breach thereof, shall, in lieu of court action, be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect, and any judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . .[4]

On November 9, 2015, DVL and Energy Solutions contracted, under the Maintenance Agreement, with Condominium Council to provide maintenance service for the heat pump and other equipment at the Property.[5] The maintenance service included testing and inspections,

---

[2] Am. Compl., Ex. A; 2d Am. 3d Party Compl. ¶ 3.
[3] 2d Am. 3d Party Compl. ¶ 3.
[4] Installment Contract at 3.
[5] Am. Compl., Ex. B; 2d Am. 3d Party Compl. ¶ 4.

preventative maintenance, and repair and placement of components or parts of all of the heat pumps in the Property, including the heat pump on the ninth floor.[6] As alleged, Commerce Associates is a third-party beneficiary of the Maintenance Agreement.[7] The Maintenance Agreement also explicitly excludes: "Electrical work external to the Equipment or maintenance of accessories, attachments, equipment, features, or other devices no described in the Maintenance Plan."[8]

Energy Solutions and DVL merged in 2014. On December 30, 2016, DVL entered into an the APA with Energy Solutions LLC.[9] Pursuant to the APA and Assignment and Assumption Agreement (the "Assignment"), Energy Solutions LLC assumed all liabilities and obligations relating to the business of the Division of DVL which accrued after the closing date of the agreement—December 30, 2016.[10] Specifically, the Assignment states

> Indemnification of Assignee by Assignor. Assignor shall indemnify, defend and hold Assignee harmless from and against any and all loss, damage, cost or expense (including reasonable attorneys' fees incurred by Assignee) arising out of or resulting from any breach by Assignor of obligations under or relating to the Assigned Agreements up to and including the date hereof.
>
> Indemnification of Assignor by Assignee. Assignee shall indemnify, defend and hold Assignor harmless from and against any and all loss, damage, cost or expense (including reasonable attorneys' fees incurred by Assignor) arising out of or resulting from any breach by Assignee of obligations under the Assigned Agreements from and after the date hereof.[11]

The Assignment states that it only assigns the "rights, obligations, title and interest in and to the contracts and agreements identified in Section 2.1.2 of the [APA]."[12] Schedule 2.1.2 lists the contracts, leases and agreements relating to the Business. They include: "(10) Post sale

---

[6] 2d Am. 3d Party Compl. ¶ 4.
[7] *Id.*
[8] *Id.*, Ex. B § 10.
[9] *Id.* ¶ 7.
[10] *Id.*
[11] Am. Compl., Ex D ¶¶ 3-4.
[12] *See* Assignment at 1.

4

operating agreement between the companies", "(14) Representative Agreement list (attached)"; "(15) All warranties, extended warranties, and service contracts relating to the Business."[13]

On February 27, 2017, Mr. Patrone was a business invitee at the Property.[14] Mr. Patrone was working as a HVAC mechanic at the Property and "suddenly and without warning he came into contact with unmarked live electrical wires as a result of the negligence of Defendants."[15] The wire shocked and electrocuted Mr. Patrone causing him to fall off a six foot ladder and become unconscious.[16] At the time of the injury, Energy Solutions LLC was Mr. Patrone's employer.[17]

On August 7, 2017, the Patrones filed suit against Defendants.[18] The Patrones seek damages resulting from Mr. Patrone's injuries sustained on February 27, 2017 including Ms. Patrone's loss of consortium.[19]

On October 14, 2017, Commerce Associates filed a third-party complaint. On April 23, 2018, Commerce Associates filed its Second Amended Third-Party Complaint (the "Third-Party Complaint") against Energy Solutions, DVL and Energy Solutions LLC. In the Third-Party Complaint, Commerce associates seeks indemnification if found liable to Plaintiffs. Specifically, the Third-Party Complaint alleges that Energy Solutions and DVL breached the contracts in that they:

> (a) sold a heat pump that was not fit for the purpose for which it was intended to be used; (b) breached an implied warranty of merchantability; (c) breached governmental and/or industry standards in testing, inspecting, maintaining, and repairing the aforesaid heat pump; (d) failed to comply with governmental and/or

---

[13] Mot., Ex. 1.
[14] Am. Compl. ¶ 6.
[15] Am. Compl. ¶ 7.
[16] Am. Compl. ¶ 7.
[17] Mot. at 3.
[18] As amended in the Amended Complaint filed on December 27, 2017.
[19] *See* Am. Compl. ¶ 10.

industry standards in training their technicians in the proper methods of testing, inspecting, maintaining, and repairing the aforesaid heat pump.[20]

On May 31 and July 2, 2018, Energy Solutions LLC filed the Motion. On June 12, 2018, Commerce Associates filed their Response to Third-Party Defendant Energy Transfer Solutions, LLC's Motion to Dismiss (the "Opposition"). On June 15, 2018, DVL filed DVL Group, Inc.'s Response to Third-Party Defendant Energy Transfer Solutions, LLC's Motion to Dismiss Second Amended Third-Part Complaint ("DVL's Opposition"). On June 21, 2018, Plaintiffs filed a Joinder of Plaintiffs, Aldo Patrone and Madelyn Patrone to defendant Raynor Worldwide's Response in Opposition to Third-Party Defendant, Energy Transfer Solutions, LLC's Motion to Dismiss Second Amended Third-Party Complaint ("Plaintiffs' Opposition").[21] The Court heard arguments on the Motion, the Opposition, DVL's Opposition and Plaintiffs' Opposition at the Hearing.

### III. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[22] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[23]

---

[20] 2d Am. 3d Party Compl. ¶ 6.
[21] The title of this filing contains the name "Raynor Worldwide." From the document, the Court reads this to be an opposition to Energy Solutions LLC's motions to dismiss.
[22] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[23] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

If the trial court "considers matters outside of the complaint, a motion to dismiss is usually converted into a motion for summary judgment and the parties are permitted to expand the record."[24] Civil Rule 12(b) states:

> [i]f, on a motion asserting the defense . . . for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the Court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties *shall* be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.[25]

However, a Court is not required to convert a motion to dismiss to a motion for summary judgment when the newly submitted document "is integral to plaintiffs claim and it is incorporated into the complaint."[26]

Commerce Associates argues that the Court cannot decide the Motion and should convert the Motion into a motion for summary judgment because Energy Solutions LLC relies upon, among other things, Schedules to the APA and Assignment—which were not attached to the Third-Party Complaint. Commerce Associates also argues that discovery is needed in several areas before a decision can be made: (1) whether any warranty or service contract, except for the disclosed Installation and Maintenance Agreements, involve Commerce Association as a party; (2) what is meant by the term "Business" as defined in the APA and whether Business applies to services such as the electrical work on HVAC.

The Court will not covert the Motion from a motion under Civil Rule 12(b) to one under Civil Rule 56. The Installation Agreement, the Maintenance Agreement, the APA, the

---

[24] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citing *Malpied v. Townson*, 780 A.2d 1075, 1090 (Del. 2001).

[25] Super. Ct. Civ. R. 12(b) (emphasis added); *see Furman v. Del. Dept. of Transp.*, 30 A.3d 771 (Del. 2011) (finding that trial court was required to convert a motion to dismiss into a motion for summary judgment when the Court relied upon materials outside the pleadings); *Veney v. United Bank*, 2017 WL 3822657, at *3.

[26] *Willis v. City of Rehoboth Beach*, 2004 WL 2419143, at *1 n.1 (Del. Super. Oct. 14, 2004) (citing *In re Santa Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59, 69 (Del. 1995)).

7

Assignment are all documents attached to the Second Amended Third-Party Complaint.[27]

Exhibit 1 to the Motion, entitled "2.1.2 Contracts, Leases & Agreements," is a part of the APA and the Assignment. Commerce Associates, not Energy Solutions LLC, chose to omit these schedules. The Court finds, therefore, that Exhibit 1 is integral to the claims made by the parties and is incorporated into the various complaints as appropriate.

## IV. DISCUSSION

### A. THE ARBITRATION IN THE INSTALLMENT AGREEMENT REQUIRES SEVERANCE OF THOSE CLAIMS FROM THE OTHER CLAIMS MADE IN THE THIRD PARTY COMPLAINT.

Delaware favors arbitration and generally interprets contractual arbitration clauses broadly.[28] "As a matter of public policy, Delaware favors the resolution of disputes by arbitration."[29] In fact, "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate."[30] When a lawsuit relates to different contracts and only some of the contracts have arbitration clauses, the whole case does not need to go to arbitration.[31] Rather, only the issues relating to the contract that demands arbitration must go to the arbiter.[32]

---

[27] 2nd Am. Compl. ¶¶ 3, 4and 7
[28] *See Elia v. Hertrich Family of Auto. Dealerships, Inc.*, 2013 WL 6606054, at *2 (Del. Super. Dec. 13, 2013).
[29] *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 715922, at *4 (Del. Ch. Feb. 23, 2017) (citing *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006)).
[30] *Behmn v. Am. Int'l. Grp., Inc.*, 2013 WL 3981663, at *4 (Del. Super. July 30, 2013). *But see Liveware Publ'g, Inc., v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78-79 (D. Del. 2003) ("the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction. It instead requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate.").
[31] *See GreenStar IH Rep, LLC*, 2017 WL 715922, at *4, 7-8 (finding that arguments relating to the contract needed to go to arbitration, but arguments relating to a contract that did not contain an arbitration clause could continue without arbitration).
[32] *Id.*

8

The Installment Agreement contains an arbitration provision. The Maintenance Agreement and the APA do not contain arbitration clauses. If the claims relate to the Installment Contract, then those claims need to be arbitrated while other claims can go forward.[33]

The Court has reviewed the Third-Party Complaint. Commerce Associates alleges that Energy Solutions and DVL breached the Installment Agreement in Paragraph 6(a) and 6(b). Commerce Associates goes on to allege that, as a result of the breach of the Installment Agreement, Commerce Associates is entitled to indemnification from Energy Solutions, DVL and Equity Solutions LLC. As such, the Court finds that the Installation Agreement's arbitration provision controls and the claims of Commerce Associates and the other parties "must be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." [34]

**B. THE MOTION'S REMAINING ARGUMENTS NEED ADDITIONAL DISCOVERY BEFORE THE COURT CAN GRANT JUDGMENT.**

The Court notes that the Motion, the Opposition, DVL's Opposition and Plaintiffs' Opposition have been properly, and effectively, presented to the Court. Counsel for the parties have done a good job of arguing their respective positions; however, the Court finds that too many issues of fact remain given the pleading set out in the Third-Party Complaint and DVL's cross-claim to grant relief to Energy Solutions LLC under Civil Rule 12.

Discovery on this point should be proportional to the open issues of the case.

The Maintenance Agreement and Installment Contract do not contain indemnification provisions. However, Section 4.2 of the APA states that "ETSL shall assume and thereafter discharge, only . . . (c) all liabilities and obligations relating to the Business, accruing after the

---

[33] *Id.*

[34] Installment Contract at 3.

Closing Date under the Assigned Agreements . . ..”  Section 1.1.9 defines Business as “(a) the business of Seller's division known as 'Energy Transfer Solutions' and internally as Division 22, (b) the business of Seller's northern New Jersey division known as 'Klima New Jersey,' and (c) the business of Seller's HVAC service division known internally as Division 35, excluding Liebert HVAC service, as presently conducted by Seller.”  Further, Section 4.2 of the APA defines liabilities and obligation” to include any “. . . guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation or responsibility. . ..”

Any injuries sustained by Mr. Patrone on February 27, 2017 occurred after the Closing of the APA on December 31, 2016.  Therefore, taking every reasonable inference in favor of Commerce Associates, it is possible that Mr. Patrone's claims accrued after December 21, 2016 and Commerce Associates could have an indemnification claim against Energy Solutions LLC.

In the Opposition, Commerce Associates relies upon *Diamond State Telephone Co. v. University of Delaware* for the proposition that “when the contract between the employer and the third party called for the performance of specified duties, there was an implied covenant to perform the service in a workmanlike way, and that breach of this covenant imposed liability for indemnification upon the employer.”[35]  The Court notes that the Delaware Supreme Court in *Howard, Needles* distinguished the *Diamond State* case.[36]  In *Howard, Needles*, the Court noted that there were two fundamental differences from *Diamond State*.[37]  First, “the action is between two contractors who have contracted with [the landowner], but enjoy no contractual relationship with each other.”[38]  “Secondly, in *Diamond*, there was not written contract.  In this case, we have

---

[35] *Diamond State Tel. Co. v. Univ. of Delaware*, 269 A.2d 52, 57 (Del. 1970).
[36] *Howard, Needles, Tammen and Bergendoff v. Steers, Perini and Pomeroy*, 312 A.2d 621 (Del. 1973).
[37] *Id.* at 624.
[38] *Id.*

10

a written contract between Contractor and Authority, with a clause which expressly sets forth the former's indemnity liability."[39]

Although there is no indication at this stage of the litigation whether Mr. Patrone received Worker's Compensation, if he did receive money through Worker's Compensation, then Energy Transfer Solutions LLC may still be liable to Commerce Associates. "An employer, even though it has paid workmen's compensation benefits to an injured employee, can be held contractually liable to a third party where a contract between the employer and third party contains provisions requiring the employer to: (i) perform work in a workmanlike manner; and (ii) indemnify the third-party-indemnitee for any claims arising from the employer-indemnitor's own negligence."[40] Further, the contract must clearly show the employer's intent to indemnify.[41]

Although the Installment Agreement and Maintenance Agreement do not contain indemnification provisions, the APA does allocate liabilities for Energy Solutions LLC. If there is underlying liability for one of the Installment Agreement or Maintenance Agreement, then Energy Solutions LLC could potentially be liable through the Assignment of liability in the APA. However, the Installment Contract contains a warranty provision that is only valid for one year. The injury occurred more than one year after installation. As plead and presented, the Court has questions that need a more developed factual record.

The Maintenance Agreement excludes "Electrical work external to the Equipment or maintenance of accessories, attachments, equipment, features, or other devices not described in the Maintenance Plan."[42] From the record, it is unclear whether the electrical wire that caused injury to Mr. Patrone falls within that exclusion. The Complaint only alleges that Mr. Patrone

---

[39] *Id.*
[40] *Precision Air, Inc. v. Stand. Chlorine of Delaware, Inc.*, 654 A.2d 403, 407 (Del. 1995).
[41] *See id* (citing *Howard, Needle,* 312 A.2d at 624).
[42] Maintenance Agreement § 10.

"suddenly and without warning [ ] came into contact with unmarked live electrical wires as a result of the negligence of the Defendants."[43]

Additionally, the Maintenance Agreement states that "[a]ll service will be performed by a fully factory trained and qualified HVAC Service Technician."[44] Commerce Associates alleges that Energy Solutions and DVL failed to comply with governmental and/or industry standards in training their technicians in the proper methods of testing, inspecting, maintaining, and repairing . . ."[45] It is too early to make a determination whether Energy Solutions LLC failed to properly train Mr. Patrone—which could potentially lead to a breach of the Maintenance Contract

The Court finds it unclear from the APA whether Energy Solutions LLC has to indemnify Commerce Associates (or DVL) for any breaches of the Installment Contract or Service Agreement. Further, at this point, it is unclear whether the electrical wire was from the heat pump or something else.

Therefore, summary judgment after discovery or trial is more appropriate than judgment under Civil Rule 12.

---

[43] Am. Compl. ¶ 7.
[44] Maintenance Agreement at 2.
[45] 2d Am. 3d Party Compl. ¶ 6.

**V. CONCLUSION**

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** the

Motion.  The Court will not dismiss all of Commerce Associates' third-party claims against

Energy Solutions LLC or DVL's cross-claim against Energy Solutions LLC at this time.

However, any claims arising under the Installation Agreement must be severed and arbitrated.

**IT IS SO ORDERED**.

Dated: October 29, 2018
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge