# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ZEEL PATEL, )
)
    Plaintiff, )
)
    v. )    C.A. No. N23C-07-031 FWW
)
THE JUICY CRAB MANAGEMENT, )
INC., and THE JUICY CRAB, INC., )
)
    Defendants. )

Submitted: December 15, 2023
Decided: February 7, 2024

*Upon Defendants' Motion to Dismiss,*
**DENIED in part and GRANTED in part.**

## MEMORANDUM OPINION AND ORDER

Damien Nicholas Tancredi, Esquire, FLASTER GREENBERG P.C., 1007 Orange Street, Suite 400, Wilmington, DE 19801, Attorney for Plaintiff Zeel Patel.

Patrick A. Costello, Esquire, DAILEY LLP, 1201 N. Orange Street, Suite 7300, Wilmington, DE 19801, Attorney for Defendants The Juicy Crab Management, Inc. and The Juicy Crab, Inc.

**WHARTON, J.**

## I.  INTRODUCTION

In late 2021 and early 2022, Defendants The Juicy Crab, Inc. ("TJC") and its subsidiary The Juicy Crab Management, Inc. ("Management") (collectively "Juicy Crab") solicited Plaintiff Zeel Patel ("Patel"), who was then living and working in Miami, Florida, to accept employment with them at their corporate headquarters in Georgia.  Accepting the job required Patel to move to Georgia.  Patel and Juicy Crab entered into an Employment Agreement and Patel moved to Georgia and began work for Juicy Crab on February 7, 2022.  Things did not go well from the start, and by the end of March, Patel was no longer employed by Juicy Crab.  He brought this litigation, seeking damages for breach of contract under what he asserts is the operative two-year employment term of the Employment Agreement, among other causes of action.  In its defense, Juicy Crab relies on a separate provision of the contract which it claims made Patel an at-will employee subject to termination at any time for any reason.  Applying Georgia law, this Court determines that the specific two-year employment provision controls the general at-will provision and denies the motion to dismiss the breach of contract claim.  Other claims are either dismissed or not for the reasons set out below.

## II.  FACTS AND PROCEDURAL HISTORY

Unless stated otherwise, the facts as recited here are taken from Patel's Complaint and are presumed to be true for purposes of the Motion to Dismiss.  Patel

is a New Jersey citizen residing in New Jersey.[1] TJC is a Georgia corporation with its principal place of business located in Norcross, Georgia.[2] Management is a Delaware corporation with its principal place of business also located in Norcross, GA.[3] Management is a subsidiary of TJC.[4] TJC, together with related parents, subsidiaries, and sister companies, operates a network of seafood restaurants, primarily located in the Southeastern United States and Texas.[5]

In October 2021, Patel was living and working full-time in Miami, Florida when Juicy Crab solicited him to accept a full-time employment offer at its corporate offices in Duluth, Georgia.[6] Patel declined this offer but provided part-time remote consulting services to Juicy Crab for the next few months.[7] Juicy Crab solicited Patel again for full-time employment, offering him the position of Senior Vice President of Information Technology and Business Solutions on January 20, 2022.[8] The position, in addition to its core duties relating to information and business technology, included oversight and support of other divisions within Juicy Crab's

---

[1] Compl. at ¶ 1, D.I. 1.
[2] *Id.* at ¶ 3.
[3] *Id.* at ¶ 2.
[4] *Id.* at ¶ 6.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.

business that lacked experienced high-level management in human resources, marketing, finance, and accounting.[9]

Juicy Crab's CEO Raymond Chen ("Chen") and its Chief Operating Officer Johnny Luo ("Luo") repeatedly represented to Patel that Juicy Crab had an annual gross revenue of $250 million dollars, forty restaurants, and a fifteen-percent net-profit margin.[10] Chen and Luo further represented that they had ample reserves to expand their payroll to support Patel's salary, as well as the salaries of multiple new roles at Juicy Crab, including: a controller, a business analyst, a data analyst, a human resources specialist, and franchise executives.[11]

On the second solicitation of employment, Luo communicated another employment offer by phone and followed up with a written employment offer.[12] This written employment offer did not contain a two-year agreement term or a 15% employment bonus term, as previously discussed between Luo and Patel by phone.[13] Patel then inquired Luo by phone to see if those terms were still part of Juicy Crab's employment offer.[14] Luo answered in the affirmative, and on January 23, 2022 sent a second written employment offer which included a two-year agreement term and

---

[9] *Id.* at ¶ 10.
[10] *Id.* at ¶ 19.
[11] *Id.* at ¶ 20.
[12] *Id.* at ¶ 14.
[13] *Id.* at ¶ 15.
[14] *Id.* at ¶ 16.

4

a 15% employment bonus term.[15]  This time Patel accepted the second employment offer and signed it on February 2, 2022 ("Employment Agreement").[16]  Juicy Crab signed on February 5, 2022.[17]

In addition to the two-year agreement and 15% bonus terms, the Employment Agreement also includes, among other provisions, an annual salary of $250,000, up to $6,000 reimbursement of rent for an apartment or house of Patel's choice and up to $6,000 reimbursement for moving expenses with valid receipts submitted.[18]

After signing the Employment Agreement, Patel resigned his previous full-time position and signed a contract to buy a new house near Duluth, Georgia.[19]  He put down a $6,000 deposit for the new house and scheduled closing for on or about February 7, 2022.[20]  In the interim, Patel entered a month-to-month lease.[21]  He moved to Georgia from Miami in early February 2022.[22]

Patel arrived for work at Juicy Crab's corporate offices in Duluth, Georgia on February 7, 2022 and began working that day.[23]  His work included setting up several

---

[15] *Id.* at ¶¶ 16-17.
[16] *Id.* at ¶ 21; Defs.' Mot. to Dismiss at Ex. A, 3, D.I. 11.
[17] *Id.*
[18] *Id.* at Ex. A, 1-2.
[19] Compl. at ¶ 22, D.I. 1.
[20] *Id.* at ¶ 23.
[21] *Id.*
[22] *Id.* at ¶ 22.
[23] *Id*. at ¶ 24.

5

hiring interviews with qualified controllers.[24]  On Patel's second day, Luo informed Patel that Juicy Crab was going through corporate restructuring and "downsizing" but that Patel's job was secure.[25]  On February 10, 2022, Chen reiterated that Juicy Crab was undergoing corporate restructuring and that Patel's job was secure.[26]  On February 11, 2022, Luo told Patel that Patel should cancel the contract for his new house and that Juicy Crab would reimburse him for his losses in terminating the purchase contract.[27]  Patel cancelled the purchase contract for the new house and continued working pursuant to the Employment Agreement.[28]

As part of Patel's work, he began the process of recruiting personnel and connecting with key vendors of Juicy Crab.[29]  He sought clarification from Juicy Crab's management as to how he should proceed on these tasks.[30]  However, as of February 12, 2023, all Juicy Crab employees ceased to communicate with him directly.[31]  Patel now only received communication from outside firms and agents purporting to speak for Juicy Crab.[32]  Patel was simply instructed to continue his

---

[24] *Id.*
[25] *Id.* at ¶ 25.
[26] *Id.* at ¶ 26.
[27] *Id.* at ¶ 27.
[28] *Id.* at ¶¶ 29-30.
[29] *Id.* at ¶ 31.
[30] *Id.*
[31] *Id.* at ¶ 32.
[32] *Id.*

work.[33]  On March 16, 2022, while accessing information from an outside provider about his employment health benefits, Patel was informed by the provider that his benefits would be canceled at the end of the month.[34]  It was only then, that Patel discovered he had been terminated from Juicy Crab.[35]  No person from Juicy Crab has communicated with Patel since.[36]

On July 6, 2023, Patel filed this Complaint against Juicy Crab.[37]  The Complaint alleges five counts: Count I - Breach of Contract, Count II - Breach of Implied Covenant of Good Faith and Fair Dealing, Count III - Fraud in the Inducement, Count IV - Negligent Misrepresentation, and Count V - Promissory Estoppel.[38]  On September 15, 2023, Juicy Crab filed this Motion to Dismiss.[39]  On October 6, 2023, Patel filed his Opposition Brief to Defendants' Motion to Dismiss.[40]  Juicy Crab then supplemented their motion with a compendium of cases on December 15, 2023.[41]

### III.    THE PARTIES' CONTENTIONS

---

[33] *Id.* at ¶ 34.
[34] *Id.* at ¶ 36.
[35] *Id.* at ¶ 38.
[36] *Id.*
[37] *Id.* at 19.
[38] *Id.* at 9-10, 12, 15, 17.
[39] Defs.' Mot. to Dismiss at 22, D.I. 11.
[40] Pl.'s Opp. To Defs.' Mot. to Dismiss at 17, D.I. 14.
[41] Defs.' Compendium of Cases, D.I. 15.

Juicy Crab moves to dismiss pursuant to Del. Super. Ct. Civ. R. 12(b)(6) for failure to state a claim upon which relief can be granted.[42] Juicy Crab first contends that this Court may consider the terms of the Employment Agreement, which was not attached to the Complaint, because it is integral to the Complaint.[43] Juicy Crab then argues that Count I - Breach of Contract fails because the Employment Agreement contains an At-Will Employment clause, allowing Juicy Crab to terminate Patel at any time.[44] Juicy Crab argues Count II - Breach of Implied Covenant of Good Faith and Fair Dealing fails because the At-Will Employment clause gave Juicy Crab the express right to terminate Patel at any time.[45] Juicy Crab argues that Count III - Fraud in the Inducement fails because: (1) Patel does not plead fraud with the particularity required by Del. Super. Ct. Civ. R. 9(b) because he has not pled the time and place of the allegations; and (2) the Employment Agreement's merger clause bars Patel's fraud allegation because the alleged promises or representations upon which Patel relies were outside of the Employment Agreement.[46] Lastly, Juicy Crab argues the Count IV - Negligent Misrepresentation fails because: (1) Georgia's "economic loss rule" bars this tort-based claim; (2) Patel

---

[42] Defs.' Mot. to Dismiss at 1, D.I. 11. Juicy Crab does not move to dismiss Count V - Promissory Estoppel.
[43] *Id.* at 12.
[44] *Id.* at 13-14.
[45] *Id.* at 16.
[46] *Id.* at 16-19.

does not identify an independent legal duty that Juicy Crab violated; and (3) Patel does not "state how actual economic loss proximately resulted from the alleged misrepresentations or how Patel reasonably relied on [Juicy Crab's] allegedly negligent misrepresentations in light of the At-Will Employment clause."[47]

In the Complaint, Patel states that the application of Georgia law is appropriate.[48] In his Opposition to Defendants' Motion to Dismiss, Patel argues that the Employment Agreement is not "at-will" because it has a definite two-year agreement term.[49] Patel argues that Juicy Crab's argument to dismiss Count II - Breach of Implied Good Faith and Fair Dealing necessarily fails because the Employment Agreement was not "at-will."[50] Patel contends that he pled fraud with the requisite particularity in his Count III - Fraud in the Inducement claim "by identifying [Juicy Crab's] fraudulent statements, how they were false, who made them and why, to whom, where, and during which specific timeline."[51] Further, Patel argues that the merger clause does not bar this claim because "the merger clause does not disclaim representations of fact, only 'promises or commitments.'"[52] Additionally, Patel contends that even if the merger clause did preclude reliance on

---

[47] *Id.* at 20-21.
[48] Compl. ¶ 45, D.I. 1.
[49] Pl.'s Opp. To Defs.' Mot. to Dismiss at 6, D.I. 14.
[50] *Id.* at 12.
[51] *Id.* at 13.
[52] *Id.* at 15.

Juicy Crab's misrepresentations of fact, he could still assert Fraud in the Inducement in the alternative to his Breach of Contract claim.[53] Patel argues that Count IV - Negligent Misrepresentation was valid because Juicy Crab "violated an independent duty of care outside the parties' contractual obligation, *i.e.*, the duty of care against making false or misleading statements to induce reliance by the other party to a transaction."[54] Further, Patel contends he may also plead Negligent Misrepresentation in the alternative to his Breach of Contract claim.[55]

## IV. STANDARD AND SCOPE OF REVIEW

Under Superior Court Civil Rule 12(b)(6), dismissal is warranted only if it appears with reasonable certainty that the nonmoving party would not be entitled to recover under any reasonably conceivable set of circumstances.[56] In ruling on a 12(b)(6) motion, the Court draws all reasonable factual inferences in the light most favorable to the opposing party,[57] and assumes that all well-pleaded facts in a complaint are true.[58] The Court's review is limited to the well-pled allegations in the

---

[53] *Id.*

[54] *Id.* at 16.

[55] *Id.*

[56] *Greenfield for Ford v. Budget of Delaware, Inc.*, 2017 WL 729769, at *2 (Del. Super. Ct. Feb. 22, 2017).

[57] *Id.*

[58] *Brevet Capital Special Opportunities Fund, LP v. Fourth Third, LLC*, 2011 WL 3452821, at *6 (Del. Super. Ct. Aug. 5, 2011).

complaint.[59]  However, the Court may consider documents outside of the pleadings when they are integral to a plaintiff's claim and incorporated in the complaint.[60] Allegations are well-pleaded if they place the defendant on notice of the claim.[61] Allegations of fraud shall be stated with particularity.[62]

## V.    DISCUSSION

### A.    The Court Applies Georgia Substantive Law

As to what state's law should apply, the Complaint contends that the application of Georgia law is appropriate because: (1) the Employment Agreement emanated from Juicy Crab's corporate headquarters in Georgia; (2) the Employment Agreement contemplated that Patel would be employed in Georgia, thereby making Georgia the place of performance of the contract; (3) the harm to Patel caused from the breach occurred originally in Georgia; and (4) Juicy Crab's' operations are headquartered in Georgia.[63]  Juicy Crab does not contend otherwise except to point out that even if Georgia law applies to substantive issues, Delaware law applies to procedure.[64]  In the absence of a forum selection clause, the Court finds the

---

[59] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[60] *Allen v. Encore Energy Partners, L.P*., 72 A.3d 93, 96 n.2 (Del.2013).
[61] *Precision Air, Inc. v. Standard Chlorine of Del., Inc.*, 654 A.2d 403, 406 (Del. 1995).
[62] Del. Super. Ct. Civ. R. 9(b).
[63] Compl. ¶ 45, D.I. 1.
[64] Defs.' Mot. to Dismiss at 11 n.5, D.I. 11.

11

application of Georgia law to be appropriate for substantive issues, and the application of Delaware law to be appropriate for procedure.

## B. The Employment Agreement Was Incorporated in the Complaint and Is Integral to It

Juicy Crab presented the Employment Agreement to this Court as an exhibit in the Motion to Dismiss.[65] Patel's claims are either based on, or directly related to the Employment Agreement.[66] While Patel did not include the Employment Agreement in the Complaint, he did incorporate it by reference throughout the Complaint.[67] Juicy Crab asserts that despite the Employment Agreement not being attached to the Complaint, the Court may consider the Employment Agreement because it is integral to the Complaint.[68] The Court finds the Employment Agreement was incorporated in the Complaint and that it was integral to Patel's claims.[69] Therefore, the Court considers the Employment Agreement in deciding this motion.

## C. Count I - Breach of Contract

The Court turns to Juicy Crab's argument to dismiss Count I - Breach of Contract. The Employment Agreement states: "The term of this agreement will be

---

[65] *See id.* at Ex. A.
[66] *See* Compl. at ¶¶ 9-10, 12, 15, 17, D.I. 1.
[67] *Id. passim.*
[68] Defs.' Mot. to Dismiss at 12, D.I. 11.
[69] *Allen*, 72 A.3d at 96 n.2.

2-years, with successful completion of the responsibilities outlined below."[70]  It also states: "**At-Will Employment:**[71] Your employment with The Juicy Crab Inc. will be on an at-will basis sans terms and conditions outline [sic] in this agreement. This means that either you or the company can terminate the relationship at any time, with or without cause or advance notice."[72]

Juicy Crab's argument to dismiss Count I - Breach of Contract is based on its view that the At-Will Employment clause controls the Employment Agreement.[73] Juicy Crab points out that "nowhere does the contract state or indicate that the first

---

[70] Defs.' Mot. to Dismiss at Ex. A, 1, D.I. 11. Additional Employment Agreement language related to the two-year term includes:

> (All moving expenses and temporary housing assistant amount paid must be returned back to company if you decided to terminate your employment prior to the 2-year commitment.)
> …
> Bonus/Commissions: You will be eligible for bonus of 15% of your annual salary based on individual performance and company profitability.
>
> Year 1: Bonus will be paid if Responsibilities are met. Additionally, details of the bonus structure will be reviewed and agreed upon for Year 2.
>
> Year 2: Bonus will be contingent on agreed upon metrics and goals determined in the previous year. If no guideline is established, Year 1 policy will continue.

*Id.* at Ex. A, 2 (Bold omitted).
[71] Items in bold appear in that manner as headings in the Employment Agreement.
[72] Defs.' Mot. to Dismiss at Ex. A, 2, D.I. 11.
[73] Defs.' Mot. to Dismiss at 8-9, D.I. 11.

two years of the contract are not also governed by the At-Will Employment clause[,]" and "the agreement does <u>not</u> state that the first two years of employment are guaranteed employment and that the At-Will Employment clause only applies after those first two years expire."[74]

Georgia caselaw provides clarity when an employment contract contains conflicting "specific" and "general" durational employment contract terms. In *Avion Systems Inc. v. Thompson*,[75] the Georgia Court of Appeals reviewed a summary judgment appeal based on an employment contract which stated: the employee was joining the employer as a "full time employee at will[,]" and "[t]he [e]mployee, upon his/her consent, agrees to provide on-site consulting services … for a minimum of (12) months."[76] The employee signed the employment contract, and within 12-months notified the employer by email that she was terminating her employment.[77] The employer brought suit thereafter, alleging that the employee breached the covenant to provide services for 12-months.[78]

The employee in *Avion Systems Inc.* argued that her agreement to provide services for 12 months was invalid and that this term conflicted with the general

---

[74] *Id*. at 13-14.
[75] 293 Ga.App. 60 (2008).
[76] *Id*. at 61.
[77] *Id*.
[78] *Id*.

provision for employment "at-will" in the introductory paragraph.[79] The employer

argued that the agreement to provide services for a minimum of 12 months was

enforceable.[80] The Georgia Court of Appeals agreed with the employer, writing:

> The construction of a contract is a question of law for the courts, as is
> the existence or nonexistence of an ambiguity in a contract. Where the
> terms of a contract are clear and unambiguous, the court looks only to
> the contract to find the parties' intent. If the contract is ambiguous in
> some respect, the court must apply the rules of contract construction to
> resolve the ambiguity.
>
> We hold that the contract provided that although the employment was
> generally at-will, it was subject to [the employee's] agreement to refrain
> from terminating her employment for 12 months. To the extent there
> was any conflict in terms as to whether [the employee] could terminate
> her employment at-will or was limited to a fixed term of at least one
> year, we resolve this issue by principles of contract construction.
> Pursuant to OCGA § 13–2–2(4), we favor a construction that upholds
> the contract "in whole and in every part." Furthermore, when a
> provision specifically addresses the issue in question, it prevails over
> any conflicting general language. Where, as here, the parties have
> explicitly set forth restrictions on the time and manner in which an
> employee may terminate employment, these specific terms must prevail
> over any conflicting general language of employment at-will.[81]

Given this precedent, the Court finds that the Employment Agreement

contains an ambiguity between the two-year agreement term and the At-Will

Employment clause.[82] The Employment Agreement's two-year agreement

---

[79] *Id.*

[80] *Id.*

[81] *Id.* at 62-63 (internal citations and quotations omitted).

[82]*Id.* at 63 (citing *Cassville–White Assoc. v. Bartow Assoc.*, 150 Ga.App. 561, 564(3)(a) (1979)).

15

term prevails over the general At-Will Employment clause because the two-year agreement term is specific and the At-Will Employment clause is general.[83] Pursuant to Georgia contract law, this construction effectuates the clear intent of the parties and upholds the contract "in whole and in every part[.]"[84] The two-year agreement term controls the Employment Agreement over the At-Will Employment clause for two years from the time the Employment Agreement went into effect. As a result, the Employment Agreement was not "at-will" at the time of Patel's termination. Therefore, it does not appear with reasonable certainty that Patel would be unable to recover under any reasonably conceivable set of circumstances on Count I - Breach of Contract.[85] Juicy Crab's motion as to Count I-Breach of Contract is **DENIED**.

**D.     Count II - Breach of Implied Covenant of Good Faith and Fair Dealing**

Juicy Crab also moves to dismiss Count II - Breach of the Implied Covenant of Good Faith and Fair Dealing. As Patel correctly argues, Juicy Crab's argument necessarily fails because it rests on the incorrect assumption that the Employment Agreement's At-Will Employment clause controlled at the time of Patel's termination from Juicy Crab. But, the specific two-year employment provision

---

[83] *Id.*
[84] *Id.* (quoting OCGA § 13-2-2(4)).
[85] *Greenfield for Ford,* 2017 WL 729769, at *2.

16

controlled at the time of Patel's termination.[86]  Therefore, it does not appear with reasonable certainty that Patel would be unable to recover under any reasonably conceivable set of circumstances on Count II - Breach of the Implied Covenant of Good Faith and Fair Dealing.[87]  Juicy Crab's motion as to Count II - Breach of the Implied Covenant of Good Faith and Fair Dealing is **DENIED**.

## E.      Count III - Fraud in the Inducement

### 1.      Patel Pled Fraud with Sufficient Particularity

Juicy Crab argues that Patel did not plead fraud with sufficient particularity as required by Del. Super. Ct. Civ. R. 9(b).[88]  Specifically, Juicy Crab argues that the Complaint fails to identify the time and place for many of the alleged misrepresentations that allegedly induced him into entering into the Employment Agreement.[89]  "Under the particularity requirement, a plaintiff must plead the time, place, and contents of the false representations, as well as the identity of the person making the representation."[90]  The Complaint meets that requirement.[91]  Patel correctly points out:

> [T]he Complaint alleges with particularity that [Juicy Crab] materially inflated their financial condition, prospects for growth, and capacity to

---

[86] *See* 12-16*, supra.*
[87] *Greenfield for Ford,* 2017 WL 729769, at *2.
[88] Defs.' Mot. to Dismiss at 16, D.I. 11.
[89] *Id.* at 19.
[90] *KnighTek, LLC v. Jive Commc'ns, Inc.*, 225 A.3d 343, 351 (Del. 2020) (quotations omitted).
[91] *See* Compl. ¶¶ 7-13, 19- 21, 43, 63, 67-68, D.I. 1.

provide the position and compensation they promised [Patel]. [Juicy Crab], however, ignore[s] [Patel's] allegations of the location and time of the actionable statements. As the Complaint states, [Chen and Luo] communicated the misrepresentations from Duluth, Georgia, to [Patel] in Miami, Florida. The Complaint also delineates the timespan of the misrepresentations: between [Patel's] rejection of [Juicy Crab's] first employment offer of October 2021 and his acceptance of the final Employment Offer on February 2, 2022.[92]

## 2. The Employment Agreement's Merger Clause Bars Count III - Fraud in the Inducement

Juicy Crab also argues that Patel cannot reasonably rely on any alleged representations outside of the Employment Agreement as a basis for fraudulent inducement.[93] Georgia caselaw provides that by affirming a contract with a merger clause, a plaintiff effectively disclaims all alleged oral misrepresentations, and, as a result, the plaintiff has no remaining evidence on which to support a fraud claim.[94] In *Ekeledo v. Amporful*, the Supreme Court of Georgia wrote:

> In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. … Furthermore, where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail. In essence, a merger clause operates as a disclaimer of all representations not made on the face of the contract.[95]

---

[92] Pl.'s Opp. To Defs.' Mot. to Dismiss at 13 (internal citations omitted), D.I. 14.
[93] Defs.' Mot. to Dismiss at 19, D.I. 11.
[94] *See Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007).
[95] *Id.* (internal citations and quotations omitted).

Notably, the Employment Agreement includes the following merger clause: "This offer letter comprises the complete terms of the offer regarding your potential employment. Any oral promises or commitments of any kind made during the interview process or by anyone else at the Company are not valid unless contained in this offer letter."[96]

Here, Patel pleads Count III - Fraud in the Inducement based on misrepresentations made by Chen and Luo.[97]  By affirming the Employment Agreement and its merger clause, Patel effectively disclaimed all of these misrepresentations, and, as a result he has no remaining evidence on which to support his claim of fraud in the inducement.[98]  Further, Patel provides no authority for his contention that "the merger clause does not disclaim representations of fact, only 'promises or commitments.'"[99]  Nor does he clearly distinguish between alleged "representations of facts" and alleged "promises or commitments."

---

[96] Defs.' Mot. to Dismiss at Ex. A, 3, D.I. 11. The heading of this clause is simply "**Other**."

[97]"As the Complaint states, [Chen and Luo] communicated the misrepresentations from Duluth, Georgia, to [Patel] in Miami, Florida."  Pl.'s Opp. To Defs.' Mot. to Dismiss at 13, D.I. 14 (citing Compl. at ¶¶ 19-20, 76-87, D.I. 1).

[98] "One of the essential elements for fraud is justifiable reliance by the plaintiff." *Condios, Inc. v. Driver,* 145 Ga.App. 537, 538 (1978) (internal quotations omitted).

[99] *Id*. at 15.

Because Patel cannot establish all necessary elements to prove fraud,[100] it appears with reasonable certainty that he would not be entitled to recover under any reasonably conceivable set of circumstances on Count III - Fraud in the Inducement.[101] Juicy Crab's motion as to Count III - Fraud in the Inducement is **GRANTED**.

F.      **Count IV - Negligent Misrepresentation**

Lastly, the Court turns to Juicy Crab's motion as to Count IV - Negligent Misrepresentation. In *Legacy Academy, Inc. v. Mamilove, LLC*,[102] the Supreme Court of Georgia held that separate fraud and negligent misrepresentation claims, "which depended entirely on allegations of pre-contractual representations[,] [were] precluded as a matter of law by [an] [a]greement's merger clause."[103] The Supreme Court of Georgia wrote:

> Under Georgia law, as a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations.
> …
> Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to

---

[100] "In order to prove fraud, the plaintiff must establish five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Summit Auto. Grp., LLC v. Clark*, 298 Ga.App. 875, 880(3) (2009).
[101] *Greenfield for Ford,* 2017 WL 729769, at *2.
[102] 297 Ga. 15 (2015).
[103] *Id.* at 20.

20

execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties.

Thus, where a written contract contains a comprehensive merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.[104]

This language makes it clear that any allegations relying on statements made before or after the Employment Agreement went into effect, are precluded as a matter of law by the merger clause. Here, the merger clause precludes Patel from relying on Juicy Crab's pre-contract representations to support his negligent misrepresentation claim.[105]

Patel argues that Juicy Crab had a duty of care against making false or misleading statements to induce reliance to enter the Employment Agreement. This argument is based on Restatement of Torts 2d, § 551(2)(b) (1977).[106] Although Georgia courts have not recognized that particular duty, the Supreme Court of Georgia has recognized a similar duty based on the Restatement of Torts 2d, § 552 (1977).[107] Nonetheless, Georgia law provides that negligent misrepresentation still

---

[104] *Id.* at 19-20 (internal citations and quotations omitted).
[105] *Real Est. Int'l, Inc. v. Buggay*, 220 Ga.App. 449, 451 (1996) (holding that justifiable reliance is an essential element for both fraud and negligent misrepresentation, and failure to meet that element bars those claims).
[106] Pl.'s Opp. to Defs.' Mot. to Dismiss at 17, D.I. 14.
[107] "Under this standard, one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary

cannot withstand a merger clause, even when an independent duty has been adopted by the courts and imputed to a defendant in the same case.[108]

Patel cannot establish all necessary elements to prove negligent misrepresentation because his claim is predicated on pre-contract representations barred by the merger clause.[109] Accordingly, it appears with reasonable certainty that Patel would not be entitled to recover under any reasonably conceivable set of

interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach. If such cannot be shown there will be no liability in the absence of privity, wilfulness [sic] or physical harm or property damage. The additional duty that this rule imposes may be, of course, limited by appropriate disclaimers which would alert those not in privity with the supplier of information that they may rely upon it only at their peril." *Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 250 Ga. 680, 681 (1983).

[108] *See Am. Casual Dining, L.P. v. Moe's Sw. Grill*, L.L.C., 426 F. Supp. 2d 1356, 67-68 (N.D. Ga. 2006) (holding that a plaintiff was not precluded from asserting a negligent misrepresentation claim pursuant to *Robert &Co. Assocs*., but also that a contract's merger clause and an acknowledgment clause barred a negligent misrepresentation claim that was based on pre contractual representations).

[109] The essential elements of a claim for negligent misrepresentation are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately from such reliance." *Martin v. Chasteen*, 354 Ga.App. 518, 552 (2020).

circumstances on Count IV - Negligent Misrepresentation.[110]  Juicy Crab's motion as to Count IV - Negligent Misrepresentation is **GRANTED**.

## V.    CONCLUSION

**THEREFORE**, Defendants' Motion to Dismiss is **DENIED in part** and **GRANTED in part.**  Defendants' Motion to Dismiss Count I - Breach of Contract is **DENIED**.  Defendants' Motion to Dismiss Count II - Breach of Implied Covenant of Good Faith and Fair Dealing is **DENIED**.  Defendants' Motion to Dismiss Count III- Fraud in the Inducement is **GRANTED**.  Defendants' Motion to Dismiss Count IV - Negligent Misrepresentation is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[110] *Greenfield for Ford,* 2017 WL 729769, at *2.