**OF THE**
**STATE OF DELAWARE**

DAVID HUME, IV
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Report:  June 11, 2026
Date Submitted:  April 29, 2026

Sean J. Bellew
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808

*Attorney for Plaintiffs*

Nicholas D. Mozal
Adriane M. Kappauf
Tyler D. Mayhew
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19899

Eugene Rome
Elizabeth B. Rocha
Rome LLP
2029 Century Park East, Suite 450
Los Angeles, California 90067

*Attorneys for Defendants*

RE:  Genesis CMG Holdings, LLC and Converze Media Group, LLC v. Tedd
Barr and Simplicity Media Group, LLC

Case No. 2025-0676-DH

Dear Counsel:

"If a group of cases involves the same point, the parties expect the same decision. It would be a labored and mischievous eccentricity which would find a distinction where there is no difference."  Benjamin N. Cardozo, *The Nature of the Judicial Process* 33 (1921).  Justice Cardozo's words aptly summarize the state of affairs.

The buyer and its new acquisition bring this action against one of the sellers and his new organization to enforce restrictive covenants. The restrictive covenants contained a condition that caused them to lapse if certain payments were not made. The payments were not made. This Court previously interpreted these terms involving other sellers in the same transaction and found that the restrictive covenants terminated and were unenforceable. I have come to the same conclusion and recommend that the Defendants' Motion to Dismiss be granted.

## I.    BACKGROUND

Genesis CMG Holdings, LLC ("Genesis") and Converze Media Group, LLC ("Converze") (collectively, "Plaintiffs") brought this action to enforce a Restrictive Covenants Agreement ("RCA") against Tedd Barr ("Barr") and to hold Barr's new company, Simplicity Media Group, LLC ("Simplicity") liable for helping Barr violate the RCAs.[1]

---

[1] I draw the following facts from Docket Item ("D.I.") 13, Plaintiff's First Amended Complaint ("Am. Compl.") and Exhibits attached thereto. I refer to the parties' briefing as follows: D.I. 17, Defendants' Opening Brief ("DOB"), D.I. 19, Plaintiffs' Answering Brief ("PAB"), and D.I. 20, Defendants' Reply Brief ("DRB").

### A. The Converze Sale

Converze is a direct response media purchasing company that develops advertising strategies and secures opportunities for businesses wishing to advertise on television and radio.[2] It is a California corporation based in Huntington Beach, California.[3] Barr held a 45% interest in Converze and two others held the remaining 55%.[4]

Barr and the others entered into a Unit Purchase Agreement ("UPA") on October 27, 2023 ("the Effective Date") to sell their respective interests in Converze to Genesis.[5] Associated with the UPA, Converze agreed to make payments to Barr and the other two sellers.[6] Genesis accomplished this by entering into subordinated notes ("Seller Notes") to pay Barr $3,725,000, and different amounts to the other sellers.[7] After an April 29, 2024 Settlement Agreement and Release, the amounts

---

[2] Am. Compl., ¶ 8.

[3] *Id.*, ¶ 8.

[4] *Id.*, ¶ 9.

[5] *Id.*

[6] *Id.*, ¶ 10.

[7] *Id.*

were reduced to account for errors in the opening balance sheet.[8]  Barr's amount was reduced to $1,577,935.84.[9]

On the Effective Date, Barr and one of the other sellers also received loans ("Shareholder Loans") from Converze for $2,363,118.26 each.[10]

## B.     The Restrictive Covenants

Barr and the other sellers also entered into separate RCAs on the Effective Date as part of Converze's sale.[11]    Barr's RCA included a nationwide noncompetition clause for four years from the Effective Date.[12]  It also included nonsolicitation clauses lasting two years from the Effective Date for Converze customers and four years from the Effective date for Converze employees.[13]  The RCA contained an integration clause that limited the agreement to the four corners of the document.[14] The RCA could only be amended, modified, or waived by written

---

[8] *Id.*, ¶¶ 10–11

[9] *Id.*, ¶ 10.

[10] *Id.*, ¶ 12.

[11] *Id.*, ¶ 13; Ex. A.

[12] *Id.*, Ex. A § 1.

[13] *Id.*, Ex. A §§ 2–3.

[14] *Id.*, Ex. A § 13.

agreement.[15]  And the RCAs contained a provision, Section 22, dictating that if the Seller Notes were not paid by the first anniversary of the Effective Date[16], then the noncompetition and nonsolicitation restrictions would terminate.[17]  Section 22 of the RCAs reads:

> Adjustment to Restricted Period. Notwithstanding anything to the contrary herein, if, following the first anniversary of the Effective Date, any of the Seller Notes (as defined in the Purchase Agreement) or the Earnout Payment (as defined in the Purchase Agreement) remain unpaid for any reason, and regardless of whether the payment is delayed or restricted by the Subordination Agreement (as defined in the Purchase Agreement) or the Senior Credit Agreement (as defined in the Purchase Agreement) or as a result of any Default or Event of Default thereunder, then Sections 1, 2, and 3 of this Agreement shall terminate and be of no further force or effect.

Any changes to the RCAs were required to be in writing and signed by the member and purchaser.[18]

## C.    Post-Sale Activity

While Barr was Managing Partner for Converze and Genesis, the entities sued the other sellers on December 19, 2024 for violations of the RCA and UPA for

---

[15] *Id.*, Ex. A, § 18.

[16] The first anniversary of the Effective Date was October 27, 2024.

[17] Am. Compl., Ex. A § 22.

[18] *Id.*, Ex. A, § 18.

soliciting former customers and employees.[19]  Barr submitted an affidavit in support of harm to Converze based on the other sellers' actions.[20]

Barr resigned from Converze on or around April 23, 2025, and formed or joined co-defendant Simplicity.[21]  Plaintiffs allege that fifteen listed employees of Simplicity are former Converze employees who resigned from Converze within days of Barr's resignation.[22]  Plaintiffs also allege that Barr, through Simplicity, solicited all of Converze's remaining clients.[23]

### D.    Procedural Posture

Plaintiffs filed an initial complaint on June 16, 2025, and an amended complaint on September 29, 2025.[24]  Defendants filed a Motion to Dismiss and Opening Brief on October 13.[25]  Plaintiffs filed their Answering Brief on November

---

[19] *Id.*, ¶ 16; C.A. No. 2024-1317-DH.

[20] Am. Compl., ¶ 17.

[21] *Id.*, ¶ 18.

[22] *Id.*

[23] *Id.*, ¶ 19.

[24] D.I. 1, 13.

[25] D.I. 17.

12.[26] Defendants filed their Reply Brief on November 25.[27] I heard Oral Argument on the Motion to Dismiss on April 29, 2026.

## II.   ANALYSIS

Defendants have moved to dismiss this action under Court of Chancery Rule 12(b)(6) for failure to state a claim. Defendants contend that Plaintiffs cannot adequately state a claim for Breach of Contract in Count I, Tortious Interference with Contract in Count III, and Civil Conspiracy in Court IV because the restrictive covenants terminated by operation of RCA Section 22 before any alleged misconduct.[28] But even if Section 22 did not terminate the restrictive covenants, Defendants allege that the noncompete is geographically and temporally overbroad, is broader than necessary to protect Plaintiffs' legitimate business interests, and the balance of equities prevent enforcement. Defendants also argue that Plaintiff's equitable estoppel theory fails as a matter of law. Defendants contend that Plaintiffs' Count II Breach of the Implied Covenant of Good Faith and Fair Dealing fails because they fail to identify a contractual gap that is not filled by the RCA.

---

[26] D.I. 19.

[27] D.I. 20.

[28] Defendants append a lack of consideration argument to the Section 22 argument by asserting that the Seller Notes were not paid.

The standard for a Rule 12(b)(6) motion is familiar to the parties: "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless 'the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'" *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citing *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

The reasonable conceivability standard grants a plaintiff "all reasonable inferences that logically flow from the face of the complaint" but does not obligate the Court "to accept every strained interpretation of the [plaintiff's] allegations." *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)). The Court will "ignore conclusory allegations that lack specific supporting factual allegations." *FMLS Hldg. Co. v. Integris BioServices, LLC*, 2023 WL 7297238, at *5 (Del. Ch. Oct. 30, 2023) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

**A. Plaintiffs Fail to State a Claim Because the Restrictive Covenants Terminated When the Seller Notes Remained Unpaid One Year After the Effective Date**

Plaintiffs contend that the RCAs and UPA are valid, binding, and enforceable against Barr.[29] In the UPA, Barr agreed to sell his interest in Converze to Genesis. In return, Genesis executed the Seller Notes to Barr and others. The parties signed the RCAs in coordination with the UPA. RCA Section 22 specifies that the restrictive covenants in Sections 1 through 3 would terminate if the Seller Notes were not paid by the first anniversary of the effective date, October 27, 2024. Plaintiffs concede that the Seller Notes were not paid by that date.[30] They also allege that Barr's misconduct took place after his resignation on April 23, 2025, and, therefore, after the one-year anniversary of the Effective Date.[31] The RCAs contained an integration clause that limited the agreement to the express terms of the document.[32] Undeterred by the RCA's four corners, Plaintiffs argue that the parties

---

[29] Am. Compl., ¶ 25.

[30] PAB at 14 ("There was never a payment made on the Seller Notes because the Shareholder Loans were greater than the amount due on the Shareholder Loans.").

[31] Am. Compl., ¶ 18.

[32] *Id.*, Ex. A., § 13.

agreed in a series of emails to offset the Shareholder Loan against the Seller Notes,

so the Seller Notes have effectively been repaid.[33]

On this RCA modification point, Plaintiffs argue that the alleged written email

exchanges constitute the signed written agreement contemplated by RCA Section

18. But Plaintiffs failed to provide any authority to support this position. Our Courts

have held that email conversations are not a written signed agreement. *Kokorich v.*

*Momentous, Inc.*, 2023 WL 3454190, at *9–10 (Del. Ch. May 15, 2023), *aff'd*, 308

A.3d 1192 (Del. 2023) (where a separation agreement required a signed writing by

both parties, the Court rejected email correspondence where one party wrote that it

"will agree" in reference to a future signed agreement); *Zutrau v. Jansing*, 2014 WL

7013578, at *1–2 (Del. Ch. Dec. 8, 2014) (holding that an oral amendment followed

by subsequent email chains did not satisfy the requirement that any modifications be

by "subsequent writing executed by the parties hereto.").

This Court has interpreted the same contractual provision and found that an

email exchange did not constitute a written modification. *Genesis CMG Holdings*

---

[33] PAB at 14 ("This argument fails because Plaintiffs have alleged that the parties expressed agreement, through discussions confirmed in a series of written emails, that the Seller Notes were to be offset against the Shareholder Loans, which were greater than the amount due on the Seller Notes.").

*LLC, et al. v. Phillip Yancey, et al.*, C.A. No. 2024-1317-SEM (Del. Ch. Feb. 26, 2026). I concur with the Senior Magistrate Judge's finding in that case. An email chain does not satisfy the requirement for a written modification signed by both parties.[34]

In a last-ditch attempt to save the restrictive covenants, Plaintiffs suggest that even if the Seller Notes are an unsatisfied condition precedent to the RCAs, the record requires more factual development on materiality of the condition precedent and whether forfeiture of the noncompete would be disproportionate. *Thompson Street Cap. P'rs IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151 (Del. 2025). Not so. The *Thompson* Court addressed the "tension" between conditions precedent and the forfeitures they may cause. *Id.* at 1168. That tension exists between Delaware's contractarian roots and a general aversion to forfeitures. *See id. Thompson* addressed this divide by looking to the clarity of the forfeiture language. If, as here, the contract clearly provides for a forfeiture, then I may consider whether compliance may be excused consistent with the guidance of the Restatement (Second) of Contracts that "the Court may excuse the

---

[34] For clarity, I note that Plaintiffs did not include the purported email agreement as an exhibit to the amended complaint nor as an exhibit to their Answering Brief.

nonoccurrence of a condition that would cause a disproportionate forfeiture unless its occurrence was a material part of the agreed Exchange." *Id.* at 1169 (internal citations omitted). While determining materiality "may require a fact-intensive analysis" there are times when "a court may be able to decide materiality as a matter of law." *Id.* (citations omitted).

I require no further factual development here. RCA Section 22 was a condition precedent to enforcement of the restrictive covenants. The clause is clear and unambiguous that forfeiture of the covenants is the result for nonpayment of the Seller Notes. Compensation was *the* material part of the agreement. Further factual development is unnecessary.

Because I have found that the restrictive covenants lapsed by contract, I do not consider Plaintiff's argument regarding the reasonableness of the geographic scope and duration of the restrictive covenants. Nor must I consider whether the covenants relate to Plaintiffs' legitimate business interests in Converze nor the balance of equities between the parties. These considerations ceased along with the restrictive covenants.

With the restrictive covenants lapsed, Plaintiffs cannot plead a reasonably conceivable breach of contract claim. All of Barr's alleged conduct took place after

October 27, 2024. He could not breach what did not exist. Similarly, the tortious interference with contract and civil conspiracy claims must fail. As Plaintiffs alleged, Barr used Simplicity as the conduit to breach the restrictive covenants.[35] I have found that the restrictive covenants ceased to exist before Barr joined Simplicity. There were no restrictive covenants for Simplicity to interfere with and Plaintiffs cannot plead a reasonably conceivable claim. The civil conspiracy count must also fail. Plaintiffs allege that Barr and Simplicity conspired to violate the nonsolicits in the RCAs. Once those restrictive covenants lapsed, Plaintiffs could allege no viable case against Barr and Simplicity because no enforceable contracts existed for Barr and Simplicity to conspire against.

For these same reasons, I decline to blue-pencil the agreement. This Court may blue pencil "expansive non-competes to supply judicious limitations." *Intertek*, 2023 WL 2544236, at *5. The restrictive covenants lapsed in whole, so there are no portions to limit.

---

[35] Am. Compl., ¶ 37.

### B. Plaintiffs Waived the Equitable Estoppel Argument and Fail to Allege Barr's Promise

Plaintiffs discuss Barr's efforts to enforce the restrictive covenants against his former co-owners.[36]   Plaintiffs did not argue estoppel in their complaint.   In Defendants' Opening Brief, they argue that Barr's conduct at Converze does not justify estoppel.[37] In their Answering Brief, Plaintiffs disclaim an estoppel argument.[38]   Plaintiffs attempted to reassert the estoppel contention at oral argument.[39]  I find that Plaintiffs abandoned the estoppel argument in their briefing, and it is waived.

### C. Plaintiffs Failed to Identify Gaps for the Implied Covenant of Good Faith and Fair Dealing to Fill

Failing all else, Plaintiffs argue that they have adequately pled the Defendants' violation of the implied covenant of good faith and fair dealing.  To

---

[36] Am. Compl., ¶¶ 17–18.

[37] DOB at 15.

[38] PAB at 16 ("Finally, Defendants challenge Plaintiff' claim for promissory estoppel (Op. Br. at 15–18), even though Plaintiffs have made no such formal claim."  Plaintiffs then argue that they, "do not allege that Barr broke any promise to them in connection with these efforts.").

[39] OA Tr. at 35:1–7 ("Your Honor, look, is it estoppel with a capital E or just a matter of -- I think, based on the facts, it's going to depend on what he testifies to under oath, but he was a willing participant in a litigation that alleges the exact same conduct that he did here. I think it is an estoppel argument.").  Counsel may well have attempted to revive the lower-case "e" estoppel argument, but the resuscitation has failed.

prove a breach of the implied covenant, a party must show "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Trifecta Multimedia Holdings, Inc. v. WCG Clinical Services LLC*, 318 A.3d 450, 467 (Del. Ch. 2024) (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).  Before the implied covenant's application, the Court "first must engage in the process of contract construction to determine whether there is a gap that needs to be filled." *Trifecta*, 318 A.3d at 467 (citing *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 183 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015) (ORDER)).  This requires the Court to review the contractual provisions to determine whether they expressly cover the dispute or whether the implied covenant is required to fill a gap. *Trifecta*, 318 A.3d at 467 (citations omitted).  The implied covenant is used "when an agreement is truly silent on a term and requires a party to identify a gap in the contract to state a claim." *Osios v. Tiptree, Inc.*, 2024 WL 2947854, at *5 (Del. Ch. Jun. 12, 2024).

Plaintiffs fail to identify a gap in the contract that the implied covenant would fill.  Instead, Plaintiffs plead generally that the implied covenant inheres in all

contracts and Barr's conduct denied Plaintiffs the benefit of their bargain.[40]  This argument falls far short of what is required.  Plaintiffs fail because there are no gaps they can exploit in the RCA.  Their argument seeks to enforce the implied duty to a lapsed provision, that is, an obligation to act in good faith regarding a duty no longer contractually prescribed.  Sections 1 through 3 contain the restrictive covenants, Section 13 includes the integration clause, Section 18 requires amendments to be in writing, and Section 22 terminates the restrictive covenants if the Seller Notes remain outstanding on the first anniversary of the effective date.  Count II should be dismissed for failure to state a claim.

## III.    CONCLUSION

For the reasons explained above, I recommend that Defendants' Motion to Dismiss be GRANTED.  This is a final report pursuant to Court of Chancery Rule 144.

Sincerely,

*/s/ David Hume, IV*

David Hume, IV
Magistrate in Chancery

cc:    All counsel of record (by File & ServeXpress)

---

[40] Am. Compl., ¶ 33.